UNITED STATES of America,
Plaintiff-Appellee,

v.

Antonio Jose HURTADO, Mark Anthony Olson, Diego Alonzo Flores-Soto, Hector Albert Rua and Jose Pita Andrade, Defendants-Appellants.

No. 85–8884.

United States Court of Appeals, Eleventh Circuit.

Dec. 19, 1985.

Edward T.M. Garland, Atlanta, Ga., for Hurtado.

John A. Nuckolls, Atlanta, Ga., for Flores-Soto.

Robert G. Jones, III, Columbus, Ga., for Hector Albert Rua.

Mark King Leban, Miami, Fla., and Lawrence S. Katz, Miami Beach, Fla., for Andrade.

Richard C. Hagler, Columbus, Ga., for Olson.

William P. Adams, Asst. U.S. Atty., Macon, Ga., for U.S.

Before FAY, JOHNSON and CLARK, Circuit Judges.

## MEMORANDUM AND ORDER.

JOHNSON, Circuit Judge:

This matter makes it appropriate that we render for this Circuit a first interpretation of the provisions of the Bail Reform Act of 1984, 18 U.S.C.A. § 3141 *et seq.* (1985). For the reasons stated herein, we find that the petitioners have demonstrated procedural error sufficient to require that we GRANT the motion for review of the order below and that we REVERSE and REMAND this matter for further consideration in light of the principles we today articulate.

### I.

In August of this year a light airplane arrived at the airport in Sylvania, Georgia. Federal law enforcement officials had information suggesting that this plane was to be used by petitioner Mark Olson, an American citizen with no permanent address, to import a large quantity of cocaine from Colombia. Olson had been observed in Sylvania that day behind the wheel of a car rented on a charge plate issued to the brother of petitioner Antonio Hurtado, a citizen of Colombia. On August 26, 1985, Olson had been observed in the company of petitioner Diego Flores-Soto, also a Colombian, in a Sylvania motel room. On the

prior evening several calls were placed to Colombia on the phone in that room. After the meeting Olson departed in the plane, while Flores-Soto travelled by automobile to Albany, Georgia, where he was observed meeting with petitioners Hurtado, Jose Andrade, and Hector Rua. Andrade is Brazilian but lives in Berkeley, California; Rua is a resident of New York and was born in Colombia.

On the following day Rua and Flores-Soto drove to a rural area near Fort Gaines, Georgia. At 8:30 p.m. agents of the U.S. Customs Service observed the landing of the light aircraft, in which Olson had earlier departed, in a peanut field near Fort Gaines. This plane had been tracked from a point over the Atlantic Ocean and was flying at a low altitude. Upon landing, the pilot fled the craft. Inside, federal agents found 630 pounds of cocaine.

During the course of that evening Flores-Soto and Rua were arrested in Fort Gaines, Olson was arrested at a roadblock near the peanut field, and Hurtado and Andrade were arrested in Albany. Other defendants, not currently before this Court, were also arrested.

On the next day, August 28, 1985, the five defendants were brought before a United States Magistrate. At that initial hearing the government entered a motion for a detention hearing consistent with the Bail Reform Act, save that the government sought to have the hearing scheduled "not sooner than three (3) working days" from the first appearance.[1] Petitioner Hurtado was represented by counsel at this proceeding. The other defendants all stated a desire for the assistance of counsel and all save Olson, who requested a court appointed attorney, indicated that they would secure private representation. Hurtado's lawyer suggested that the hearing on pretrial detention be held on September 4 or 5 so that other attorneys could be retained and an interpreter made available for the several defendants not fluent in English. The magistrate set the hearing date for September 5, 1985—nine days after the initial arrests.

On September 4, one day prior to the scheduled pretrial detention hearing, the five petitioners in this action were indicted on four counts: conspiracy to import cocaine in violation of 21 U.S.C.A. § 963; conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C.A. § 846; importation of cocaine in violation of 21 U.S.C.A. §§ 952, 960 and 18 U.S.C.A. § 2; and possession of cocaine with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1) and 18 U.S.C.A. § 2. Each count carries a possible prison term of twenty years.

On September 5, 1985, the magistrate ruled that, because the defendants had already been indicted, the government had made a showing of probable cause adequate to justify detaining the defendants pending trial under 18 U.S.C.A. § 3142(e).[2] Upon showing of probable cause that a defendant committed certain drug-related offenses the statute creates a rebuttable presumption that the defendant would flee if released and accordingly per-

---

1. The government got the law turned around, for the statute provides that "[e]xcept for good cause" a continuance had at the government's behest "may not *exceed* three days." 18 U.S.C.A. § 3142(f) (1985) (emphasis supplied). Likewise, the statute does not provide that the three days be "working" days.

2. That section provides that when defendants are accused of violation of certain drug laws, [s]ubject to rebuttal by the person [accused] it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as re-

quired and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, section 1 of the Act of September 15, 1980, or an offense under section 924(c) of title 18 of the United States Code.

18 U.S.C.A. § 3142(e) (statutory citations omitted).

mits pretrial detention. The magistrate found that, under the terms of the statute, detention was justified due to the nature of the charges as involving drugs and the complete absence of ties to the community.[3] In his opinion the defendants had failed to meet their burden of coming forward with some evidence to rebut this presumption.[4] However, the magistrate denied petitioner Andrade's request to subpoena two agents of the Drug Enforcement Administration, who were to testify that Andrade was elsewhere and had no contact with the other actors in the alleged conspiracy, on the grounds that this was an attack on the indictment, rather than on the need for detention. Andrade argues that this made the presumption of flight irrebuttable.

The magistrate also rejected defendants' complaint that the hearing was untimely held in violation of Section 3142(f), which statute requires that the pretrial detention hearing "shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government seeks a continuance" which in no event may take place more than five days after the first appearance except "for good cause." In this case eight days had elapsed. The magistrate ruled that the need to obtain private counsel and to secure an interpreter justified the delay.

The detention order was signed by the magistrate on September 6 and filed with the clerk on September 9. The clerk failed to send copies to defendants' various counsel.

On September 12 the defendants were arraigned before the United States District Court for the Middle District of Georgia. The question of pretrial detention was not raised. On October 3, petitioner Andrade submitted to the court, under the provisions of 18 U.S.C.A. § 3145(b), a motion to revoke and amend the Oral Detention Order entered on September 6.

The trial court entered a final Order of Detention under Section 3142(e) on October 31. That decision neither adopts explicitly the factual findings of the magistrate nor makes independent findings of fact to support its conclusion. Andrade's motion to revoke and amend the magistrate's order was simply denied on the grounds that "no condition of release or combination of conditions will reasonably assure the appearance of the defendants...." Andrade then filed the instant motion with this Court. The other four join in that motion. This case is slated for trial on January 27, 1986.

## II.

■ This case presents us with our first opportunity to consider the scope and effect of the Bail Reform Act. We have yet to consider which standard of review is appropriate in considering appeals under that Act. Our brethren on the other circuit courts of appeals are sharply split on this question. Three circuits have held that the

---

**3.** The statute requires that this determination be made by consideration of four decisional factors: (1) the nature of the crime as involving a narcotic drug; (2) the weight of the evidence against each defendant; (3) the defendant's background in terms of familial, financial, and residential ties to the community, and past history of involvement with drug and other crimes; and (4) the danger to others in the community if the defendant were released prior to trial. *See,* 18 U.S.C.A. § 3142(g).

**4.** In a careful and scholarly parsing of the statute and the legislative discussions that led to its adoption, the First Circuit has concluded that the intent of Congress was that the flight pre-

sumption provision assigns to a defendant only the burden of production, rather than that of persuasion. *United States v. Jessup,* 757 F.2d 378, 380–84 (1st Cir.1985). We agree.

Once the government establishes probable cause it becomes the task of the defendant to come forward with some quantum of evidence contrary to the fact presumed by the statute. Having done so, the defendant has met his obligation. The ultimate burden of persuading the trial judge or the magistrate still rests with the government. Thus when the government's showing is not clearcut the presumption is that the defendant should not be detained.

review of a district court finding that pretrial detention is appropriate is governed by the clearly erroneous standard. *United States v. Fortna,* 769 F.2d 243, 250 (5th Cir.1985) ("[W]hen we review the district court's order, whether it be the initial order or one issued in response to a motion to revoke or amend ... our scope of review is limited, and the order is to be sustained 'if it is supported by the proceedings below.' "); *United States v. Chimurenga,* 760 F.2d 400, 405 (2d Cir.1985) (on appeal court must "consider whether in light of defendant's evidence, it was clearly erroneous for the district judge to determine that he did not present a danger to the community or a risk of flight."); *United States v. Williams,* 753 F.2d 329, 333 n. 12 (4th Cir.1985) ("[D]eference [to trial judge] cannot be total, it cannot insulate from correction findings supported by no evidence or by evidence so lacking in merit as to render the district judge's decision clearly erroneous.").

Five circuits have held that appellate review is plenary and independent, at least as to mixed questions of law and fact, while according due deference to the trial court's purely factual findings. *United States v. Maull,* 773 F.2d 1479, 1487 (8th Cir.1985) (*en banc*) ("We believe that in review under section 3145 the clearly erroneous standard should be applied to factual findings made by the district court.... However, conclusions and reasoning relating to the ultimate questions flowing from such factual considerations ... should be the subject of independent review."); *United States v. Motamedi,* 767 F.2d 1403, 1406 (9th Cir.1985) (decision to detain based on factual findings but presents "mixed question of fact and law" which "transcends the facts presented.... * * * We hold that the applicable standard of review for pretrial detention orders is one of deference to the district court's factual findings, absent a showing that they are clearly erroneous, coupled with our right of independent examination of the facts, the findings, and the record to determine whether an order

of pretrial detention may be upheld."); *United States v. Hazime,* 762 F.2d 34, 36–37 (6th Cir.1985) ("[W]e will not disturb the factual findings of the District Court and magistrate in pretrial hearings unless we determine those findings to be clearly erroneous. Our standard in reviewing mixed questions of law and fact and the legal conclusions of the District Court, however, remains that of *de novo* consideration."). Two circuits have adopted a slightly different approach. Rather than characterizing these as mixed questions, they state that the standard of review is plenary, but they still note that the trial court's determination is due some deference. *United States v. Bayko,* 774 F.2d 516, 519–20 (1st Cir. 1985) ("An 'abuse of discretion' standard does not make sense in light of the procedures set up in appellate Rule [Fed.R. App.P.] 9(b) and only a more rigorous review can provide the kind of protection of both the defendant's liberty interests and the public interest in crime prevention and punishment which Congress felt was necessary in this area. An independent review of the bail decision tempered by deference to the district court's firsthand judgment of the situation would seem to provide the level of protection Congress had in mind for both the defendant and the public."); *United States v. Delker,* 757 F.2d 1390, 1399–1400 (3d Cir.1985) ("An independent determination by the appellate court would seem appropriate in light of the nature of the question to be determined. A crucial liberty interest is at stake." Yet "the courts of appeals are not free to ignore a trial judge's supporting statement of reasons for his or her actions."). While the characterization of the standard is somewhat different, we believe that in practice the scope of review is the same under either approach.

We find persuasive and adopt the more expansive view of the First, Third, Sixth, Eighth, and Ninth Circuits and characterize these cases as presenting mixed questions of law and fact to be accorded plenary

review on appeal.[5] However, we will be chary of disturbing the purely factual findings of the trial court and will do so only if such findings are clearly erroneous. Accordingly, we hold that the criteria set forth at 18 U.S.C.A. § 3142(g)(3) and (4) pose factual questions pertaining to individual characteristics of the defendant and the threat posed by his release. These are subject to the clearly erroneous standard of review. The factors articulated in subsections (1) and (2), and those set forth at Section 3142(c)(2)(A) through (N) are fundamentally different in that they require the trial court to exercise judgment and discretion in applying legal standards to certain facts, rendering such determinations mixed questions subject to *de novo* review before this court. *See generally, Maull,* 773 F.2d at 1487–88.

We reach this conclusion for several reasons. First, we look to the legislative history which, though spare, provides guidance. The 1966 Bail Reform Act provided that *pretrial* detention decisions were due to be affirmed on appeal if "supported by the proceedings below." 18 U.S.C.A. § 3147(b) (repealed by 1984 Act); *cf., Jessup,* 757 F.2d at 387–88; *Fortna,* 769 F.2d at 250. The 1966 Act did not provide a standard of review for *post-conviction* detention decisions, leaving it to the courts to craft their own. The seminal opinion on that question was *United States v. Provenzano,* 605 F.2d 85, 92 (3d Cir.1979), finding that independent review was required on appeal under the provisions of Fed.R. App.P. 9(b).

When it adopted the 1984 Act, Congress repealed the pretrial review provisions of Section 3147(b) and made no provision for the standard of appellate review of detention decisions in either pre- or post-trial settings save to say that appellate proce-

dures were to be those "set forth in Rule 9 of the Federal Rules of Appellate Procedure." S.Rep. No. 225, 98th Cong., 1st Sess. 1, 29–30 & n. 92 (1983), *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3212–13 & n. 92. Fed.R.App.P. 9(a) provides that, after the trial court reaches a determination as to release, it must set forth "in writing the reasons for the action taken" and the appeal shall be effected with the aid of "such papers, affidavits, and portions of the record as the parties shall present. The court of appeals or a judge thereof may order the release of the appellant pending the appeal."

The very encompassing nature of this inquiry, and especially the requirement that the trial court set forth in some detail its reasoning, suggests that the inquiry is to be probing. Further, the language of the Rule apprehends that either party may expand the record, permitting consideration by the appeals court of evidence not even presented to the trial court. Fed.R.App.P. 9(a); *Bayko,* 774 F.2d at 519; *Maull,* 773 F.2d at 1487; *Delker,* 757 F.2d at 1399. The affirmative congressional decision to repeal the deferential standard of the 1966 Act is also instructive. Finally, we find helpful *Provenzano*'s interpretation of the identical language of Rule 9(b), relating to post-conviction cases, as requiring independent review. 605 F.2d at 93. Congress apparently was satisfied with that interpretation; with knowledge of the holding in *Provenzano* it threw the question of pretrial review open to the Rule 9 standard.

Beyond the legislative history, this reading of the statute is reinforced by five instances where members of the United States Supreme Court, acting as Circuit Justices, considered motions for review of denial of bail in post-conviction settings. Justice Powell, Circuit Justice for the for-

---

5. In reaching the conclusion that these cases present mixed questions of law and fact subject to *de novo* review we recognize the danger inherent in that characterization: that it can be a vehicle by which appellate courts may pry open what is in reality a factual determination best

left to the province of the fact finder. *See, Dalton, Taking the Right to Appeal (More or Less) Seriously,* 95 Yale L.J. 62, 88, 90 (1985). Nonetheless, we believe the approach we today craft strikes the appropriate balance between the appellate and trial court functions.

mer Fifth Circuit, noted that in considering such petitions the determination of the trial court is due "great deference," but that on review a "Circuit Justice ... has a responsibility to make an independent determination on the merits of the application." *Mecom v. United States,* 434 U.S. 1340, 1341, 98 S.Ct. 19, 20, 54 L.Ed.2d 49 (1977) (Powell, J., in chambers); *accord, Truong Dinh Hung v. United States,* 439 U.S. 1326, 1328, 99 S.Ct. 16, 17, 58 L.Ed.2d 33 (1978) (Brennan, J. in chambers); *Harris v. United States,* 404 U.S. 1232, 1232, 92 S.Ct. 10, 10, 30 L.Ed.2d 25 (1971) (Douglas, J., in chambers); *Sellers v. United States,* 89 S.Ct. 36, 38, 21 L.Ed.2d 64 (1968) (Black, J., in chambers); *Reynolds v. United States,* 80 S.Ct. 30, 32, 4 L.Ed.2d 46 (1959) (Douglas, J., in chambers). Because the 1984 Act makes no distinction between pre- and post-conviction review of denial of bail, these determinations butress the standard of review we have chosen. Neither is there any suggestion in the statute, in these five decisions, nor reason compelled by logic for arguing that the standard of review at the secondary level is somehow less expansive than that permitted at the tertiary level in our federal system.

We decline to follow the more restrictive holdings of the Second, Fourth, and Fifth Circuits. These courts reached their conclusions largely by extending precedents applicable to provisions of the prior Act which Congress chose not to include in the 1984 version. We find little evidence of any consideration of the current statute, its legislative history, how it differs from its predecessor, and the policy implications implicit in Congress's revision. We therefore decline to follow *Chimurenga* and *Williams* for the reasons given by the *en banc* court in *Maull,* 773 F.2d at 1486. Likewise, the *Fortna* decision, 769 F.2d at 250, in part suffers from this defect and in equal measure was based on *dicta* of the First Circuit in *Jessup,* 757 F.2d at 387–88,

from which that court has since retreated. *Bayko,* 774 F.2d at 518–19 n. 3. On the whole, we find the approach we adopt the better way—consistent both with the intent of Congress and with our duty as an appellate court.

### III.

The Bail Reform Act is of recent vintage; we have not yet considered this statute in detail. This petition raises five issues: A) whether the pretrial detention hearing was untimely held; B) whether a grand jury indictment is sufficient evidence of probable cause to invoke the presumption of flight provisions of the Bail Reform Act; C) whether the magistrate's restriction on the defendants' right to subpoena certain government witnesses served to create an irrebutable presumption contrary to the statute; D) whether the district court's order of detention was inadequate under the terms of the statute; and E) whether the magistrate and the trial court were clearly erroneous in finding that the defendants posed flight risks sufficient to justify detention. Because these contentions pose questions of first impression, many falling in the interstices of statutory language, they must be discussed at some length.

### A. Timeliness:

When petitioner Andrade and the others were brought before the magistrate for the initial hearing, on August 28, only petitioner Hurtado was accompanied by counsel. All others expressed the desire for representation. Some, but not all, needed interpreters as well. The government's attorney was not present. The magistrate *sua sponte* set the pretrial detention hearing for September 5, eight days later. At the September 5 hearing objection was raised that the hearing was held out of time and in violation of the statute, 18 U.S.C.A. § 3142(f),[6] in that the defend-

---

**6.** The statute provides that if detention is sought:

The hearing shall be held immediately upon the person's first appearance before the ju-

ants had not requested a continuance and that in any event the hearing was held more than five days after the initial appearance.[7] This poses a question of statutory construction subject to plenary review on appeal. *Cathbake Inv. Co. v. Fisk Electric,* 700 F.2d 654, 656 (11th Cir.1983).

Though this question was broached in *United States v. Medina,* 775 F.2d 1398, 1401–1402 (11th Cir.1985) (*per curiam*), we withheld judgment on the proper resolution of the issue. It is now squarely before us and we note that, without exception, every appellate panel that has considered this question has read the continuance provisions of Section 3142(f) as *strictissimi juris.* We do likewise.

The language of subsection (f) is unambiguous and admits of no exception. Congress provided that the determination to detain or release an accused must be made quickly—*"immediately upon the person's first appearance"*—except in three situations, all expressly provided for: 1) the government might ask for three days to

prepare; 2) the defendant may have up to five days to secure counsel and marshal his defense; and 3) in exceptional cases "for good cause" these time constraints may be relaxed. In this case the government asked for its three days;[8] the petitioner did not request his statutory time allotment.

Except for good cause, there is no provision for extending the continuance period beyond the statutorily-provided five days.[9] We construe this requirement most strictly. Congress considered how much time was needed to prepare for and to contest the relatively simple issues raised at such hearings. It determined that the government could have up to three days and that the defendant could have no more than five. Congress could have made this requirement elastic, permitting such delays as are reasonable and necessary, had it so chosen; it did not. It delimited the process as part of a plan to effectuate a larger purpose: the difficult balancing of a public interest in detaining certain types of suspected of-

dicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of the person may not exceed five days, and a continuance on motion of the attorney for the Government may not exceed three days. During a continuance, the person shall be detained....

7. Hurtado's counsel did suggest delaying the hearing until September 4 or 5. Whether it in fact does, we assume *arguendo* that this constitutes a request under Section 3142(f) for his full right to a continuance under the terms of the statute. But that is still insufficient to justify a delay of eight days—in excess of the period provided by Congress in the statute—because the statute does not provide for voluntary waiver of the time requirement by the defendant. *United States v. Al-Azzawy,* 768 F.2d 1141, 1145 (9th Cir.1985).

8. The government makes some suggestion that the statutory provision for three or five days is governed by Fed.R.Crim.P. 45(a), which rule ordinarily provides that in computing statutory time periods one does not count weekends or holidays. While this would, at most, prevent our affording relief to Hurtado if we assume that his counsel's statement constitutes a request for the statutory five days, we find that Rule

45(a) is not applicable to this calculation. While Congress expressly provided in Section 3142(d) that in counting days for temporary detention we should exclude weekends and holidays, it did not include a similar provision in subsection (f). By expressly providing in one section for such an exclusion Congress obviously assumed that Rule 45(a) would not otherwise apply. By only making such provision in one of many subsections, we must assume this was a calculated decision. We must, in such cases, "refrain from concluding ... that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship." *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983); *North Haven Board of Education v. Bell,* 456 U.S. 512, 521, 102 S.Ct. 1912, 1917, 72 L.Ed.2d 299 (1982).

9. The government's citation to *Fortna* in this regard does not obtain. While *Fortna* found that the absence of counsel at the initial appearance compelled a delay, as the court there noted the delay was harmless and did not support a reversal because the "hearing was set for within five days, the maximum period for a continuance...." 769 F.2d at 249.

fenders as against the private interest in remaining at liberty until proven guilty. 1984 U.S.Code Cong. & Ad.News, *supra,* at 3189–90, 3203–05;[10] *United States v. O'Shaughnessy,* 764 F.2d 1035, 1038 (5th Cir.) (*per curiam*), *vacated on reh'g as moot,* 772 F.2d 112 (5th Cir.1985) (*per curiam*).

It is not our province to upset that balance by engrafting onto the statutory scheme the heavy weight of unprovided-for delay. There is nothing in either the statute or the congressional history that permits a contrary conclusion. *See, United States v. Al-Azzawy,* 768 F.2d 1141, 1145 (9th Cir.1985) ("[T]he procedures under section 3142 of the Act must be strictly followed as a precondition to detention under subsection (e). If the time constraints are violated in any material way, the district court should not order unconditional pretrial detention of the person."); *O'Shaughnessy,* 764 F.2d at 1038 ("Under the Act's unambiguous mandatory language, noncompliance with the 'first appearance' requirement of [the statute] precludes detention under [the statute]."); *United States v. Payden,* 759 F.2d 202, 205 (2d Cir.1985) ("Moreover, the fact that a hearing was scheduled as soon as possible ... does not alter the fact that the hearing did not occur on Payden's first appearance."). On the other hand, Congress did admonish us that decisions to release or to detain are to be reviewed "promptly." 18 U.S.C.A. § 3145.

■ The magistrate on his own motion made what was, in essence, a good cause finding that the petitioners could not adequately prepare defenses within that five-day period because they might wish to secure out-of-town counsel and because some might need interpreters.[11] This was error for three reasons—because a judicial officer has no authority to act *sua sponte* on questions of temporal continuances, because "good cause" does not properly encompass mere factors of convenience for either the court or the parties, and because the magistrate and trial court failed to make scheduling determinations based upon the circumstances of the various defendants.

First, Section 3142(f) by its terms makes no provision for a *sua sponte* finding of good cause to extend the time for holding the detention hearing. *Al-Azzawy,* 768 F.2d at 1144. It does, on the other hand, provide in that same paragraph that the judge may order medical examinations of suspected drug addicts, and that he may on his own motion move for pretrial detention under subsection (f)(2). As noted above, when Congress expressly provides in the one section what it omits in the other we must assume that the decision was conscious; we may not import into the statute a provision Congress elected not to include.

---

**10.** Most instructive is the following language from the Senate Report:

> Although a continuance may be necessary for either the defendant or the government to prepare adequately for the hearing, particularly if the defendant was arrested soon after the commission of the offense with which he is charged, the period of a continuance sought by the defendant and of one sought by the government is confined to five and three days, respectively, in light of the fact that the defendant will be detained during such a continuance.

**11.** At the September 5 hearing the magistrate explained his actions as follows:

> There was no agreement made about anything. The continuance was made by me for the simple reason that to give time for each defendant to employ counsel. [Sic]. So far as I know the federal or DEA agent was ready to proceed with a hearing the other day when we were here. I rather [sic] the U.S. Attorney's Office was not present, but I would presume that he was ready for a preliminary hearing when they were first brought in on the initial appearance. And since each person wanted to employ their [sic] own counsel—one defendant wanted appointed counsel—then the only thing I could do was to continue it.
> Appendix to Petitioner's Motion, Exhibit 3 at 73.

*Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983).[12]

While the magistrate's concern for safeguarding the procedural adequacy of the hearing is laudable, this concern was misplaced. Congress recognized that counsel might (indeed, practically speaking, would always) be necessary; it afforded defendants, *at their option alone,* up to five days in which to secure counsel. But Congress was unwilling to entrust to the magistrates, or the trial courts, or to the appellate bench, the ability on a judge's own motion to manipulate the statute so as to "order[] the defendant temporarily detained and then [to] hold[] the key 'detention' hearing at some much later time." *United States v. Angiulo,* 755 F.2d 969, 972 (1st Cir.1985); *accord, United States v. Alatishe,* 768 F.2d 364, 369 (D.C.Cir.1985) ("To permit the judicial officer to postpone a detention hearing, while the defendant remains detained, places an unfair burden on the parties to object to such a continuance and undermines the purpose of the immediacy requirement.").

█ Second, the magistrate's decision to delay the detention hearing was premised on factors of convenience. We find nothing in the language or the legislative history to suggest that the mere convenience of the court or of the attorneys, on either side, constitutes good cause to expand upon the three or five day period provided. Congress recognized and responded to the need for preparation time. It limited that grant to three or five days. On the other hand, there is ample evidence to suggest that Congress was greatly concerned with minimizing delay in the resolution of these questions. The statute provides that the hearing should be held "immediately" and the legislative history is replete with references to the need to decide expeditiously

whether an accused shall be deprived of his freedom pending trial. 1984 U.S.Code Cong. & Ad.News, *supra* at 3189–90, 3202–05. We agree with the decision in *Al-Azzawy,* which held that a "continuance to suit the schedule of counsel for a detained individual is not a continuance for good cause, at least in the absence of a showing that no other lawyer is available to handle an earlier hearing, that the time is in fact necessary for preparation, or of some other valid reason clearly set forth in the record." 768 F.2d at 1146. From aught that appears on the record here, the magistrate made no effort to determine whether adequate counsel could be had within the statutory time frame, other than his own assumption. In light of the relatively simple task facing counsel in a pretrial detention hearing, we would require an ample showing indeed, and certainly one greater than the virtually unsupported determination here, that five days is not enough. "The liberty interests of the individual who has yet to be tried should not be subordinated to scheduling problems of counsel or the court." *Id.*

█ There was error for a third reason. It is uncontested from the record that at least some of these five defendants spoke English; one had his counsel there at the very first hearing. The government was apparently ready to proceed. Even if we were to accept that securing out-of-town counsel or interpreters constitutes good cause for delay, that would obviously not apply to all five of these petitioners. The court below was in error in treating all five alike. At the minimum it could have moved ahead with hearings for those having counsel and not needing interpreters.

Absent compelling countervailing considerations, we may not disregard the clear,

---

**12.** The one case which has permitted a *sua sponte* order of delay was, by its own admission, based on "unique circumstances," *United States v. Alatishe,* 768 F.2d 364, 369 (D.C.Cir.1985), and even that court cautioned that such orders would not be permitted "except in the most

compelling situations." We do not accept that court's reading of the statute as permitting at least some *sua sponte* delays, but, in any event, the compelling considerations present there are not apposite to the case at bar.

mandatory statutory scheme Congress here erected. *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 187 n. 33, 98 S.Ct. 2279, 2298 n. 33, 57 L.Ed.2d 117 (1978); *Arline v. School Brd. of Nassau County,* 772 F.2d 759, 762 (11th Cir.1985) ("Where the language of a statute is not ambiguous and does not lead to absurd results, the job of the courts is to apply it as written."). To stretch the terms of the statute to permit looser standards for resolving questions of pretrial detention would be improperly to encourage "imprecise application of [the] procedural requirements." *Payden,* 759 F.2d at 205. We are, it must be remembered, being asked to permit presumptively innocent persons to be denied, without a hearing, their right to liberty. To deviate from the language Congress chose in such a case would be unconscionable. Simply put: "The Government has not persuaded us that we, as an appellate court, rather than Congress, should deviate from the Act's unambiguous mandatory language." *O'Shaughnessy,* 764 F.2d at 1038.

### B. Indictment and Probable Cause:

■ The petitioners submit that the trial court relied in error on the magistrate's finding that the grand jury indictment entered against the petitioners was sufficient to establish probable cause to detain under the statute. Section 3142(e) provides that the presumption of flight arises "if the judicial officer finds that there is probable cause to believe that the person committed an offense" of the sort charged in the instant case, carrying potential punishment of ten or more years in prison. Petitioners rely on the opinions of two trial courts in other circuits to the effect that a showing of probable cause must be made independent of the grand jury indictment. *United States v. Allen,* 605 F.Supp. 864, 868–71 (W.D.Pa.1985); *United States v. Maktabi,* 601 F.Supp. 607, 611 (S.D.N.Y.1985).

The question of what constitutes a showing adequate to suggest probable cause is purely a question of law and hence is subject to plenary review by this court. *Cathbake,* 700 F.2d at 656.

It is so well settled as to be beyond cavil that the return of a true bill by a grand jury, resulting in indictment, conclusively demonstrates that probable cause exists implicating a citizen in a crime. *Ex parte United States,* 287 U.S. 241, 250, 53 S.Ct. 129, 131, 77 L.Ed. 283 (1932); *Gerstein v. Pugh,* 420 U.S. 103, 117 n. 19, 95 S.Ct. 854, 864 n. 19, 43 L.Ed.2d 54 (1975); *Giordenello v. United States,* 357 U.S. 480, 487, 8 S.Ct. 1245, 1250, 2 L.Ed.2d 1503 (1958). The only question here is whether Congress used the term "probable cause" in 18 U.S.C.A. § 3142(e) in the usual sense—an evidentiary finding by a judicial officer or a grand jury leading to the issuance of an arrest warrant or an indictment—or whether Congress meant to give some new, distinctive nuance to the term.

In *Allen,* the district court undertook a lengthy analysis of the legislative history and concluded that the plain language of the statute did not mean what it said. We find *Allen*'s interpretation unpersuasive. It is a venerated canon of statutory construction that, barring clear contrary indication, we must give words their usual, plain meaning. Beyond this, a parsing of the relevant legislative history confirms our reading of the statute.

As is so often the case, the intent of Congress in adopting this statute is opaque. The Senate Report notes that subsection (e) of the statute must be met in order to justify detention, but goes on to suggest that "the fact that the defendant is *charged* with an offense described in subsection (f)(1)(A) through (C) is not, in itself, sufficient to support a detention order." (Emphasis supplied).[13] The court in *Allen* read this to mean that merely presenting a grand jury indictment is not enough to

---

**13.** The relevant portion of the legislative history is as follows:

The Committee has determined that whenever a person is charged with one of these

establish probable cause within the meaning of the statute. Rather, there must be an *independent* showing of probable cause separate and distinct from the grand jury's true bill.

*Allen* teaches that, though the statute says that the presumption of flight arises upon showing "probable cause," we should assume that, when Congress said in the legislative history that being "charged" was not enough to invoke the presumption, Congress meant something other than probable cause. But what, then, did Congress mean by "charged"? The method by which one is charged with a criminal offense in a federal court is by means of an indictment issued by a grand jury based on a finding of probable cause. *Allen*'s logic compels reading the statute as stating that a charge, which comes only upon showing probable cause, is something of a lesser order than the probable cause which constitutes one of its constituent elements.

The problem stems from imprecision of language on the part of Congress. The answer, we think, lies in the "However" sentence that follows the congressional statement in the "Because" sentence that a "charge" is not enough. "However," Congress determined, "the seriousness of the offenses described in subsection (f)(1)(A) through (C) *coupled with* the government motion *is* a sufficient basis for *requiring an inquiry* into whether detention may be necessary to protect the community from the danger that may be posed by a defendant charged with one of these crimes." (Emphasis supplied).

The congressional purpose in constructing this statute was to attempt a balancing of the interests of the public in bringing to justice those whose likelihood of flight "is particularly high" as against the individual's liberty interest founded on the presumption of innocence until guilt is proven. 1984 U.S.Code Cong. & Ad.News, *supra*, at 3185–86, 3189–90, 3201–02. The "However" sentence reinforces this. The indictment, coupled with the government's request for detention, "is a sufficient basis for requiring *an inquiry* into whether detention may be necessary ...." *Id.* at 3204 (emphasis supplied). Congress left "the resolution of this question to the sound judgment of the courts acting on a case-by-case basis." *Id.* at 3212. The showing of probable cause (by means of an indictment) *may* be enough to justify detention if the defendant fails to meet his burden of production, or if the government's showing is sufficient to countervail the defendant's proffer, *Jessup,* 757 F.2d at 383–84, 389, but it will *not necessarily* be enough, depending upon whether it is sufficient to carry the government's burden of persuasion. What Congress meant in the "Because" line was that the indictment is not conclusive; the government may not merely come before the trial court, present its indictment, and thereby send the defendant off to jail, foreclosing any further discussion. Rather the defendant still must be afforded the opportunity for a hearing at which he may come forward with evidence to meet his burden of production, leaving on the government the ultimate burden of persuasion.

offenses and the attorney for the government elects to seek pretrial detention, a hearing should be held so that the judicial officer will focus on the issue of whether, in light of the seriousness of the offense charged and the other factors to be considered under subsection (g), any form of conditional release will be adequate to address the potential danger the defendant may pose to others if released pending trial. Because the requirements of subsection (e) must be met before a defendant may be detained, the fact that the defendant is charged with an offense described in sub-

section (f)(1)(A) through (C) is not, in itself, sufficient to support a detention order. However, the seriousness of the offenses described in subsection (f)(1)(A) through (C) coupled with the government motion is a sufficient basis for requiring an inquiry into whether detention may be necessary to protect the community from the danger that may be posed by a defendant charged with one of these crimes.
1984 U.S.Code Cong. & Ad.News, *supra,* at 3204.

Thus we hold, as did the other two circuit courts to consider this question,[14] that an indictment is sufficient to demonstrate probable cause, creating a rebuttable presumption of flight under the terms of Section 3142(e).[15] Accordingly, petitioners' contention is without merit.

### C. Rebuttable Presumptions:

The petitioners next contend that the magistrate erred in quashing the defense subpoena of two Drug Enforcement Administration officers that petitioners wished to cross-examine in order to "rebut the showing of probable cause established by the indictment or the sworn complaint." Petitioner's Motion at 26. By denying them the opportunity to attack the government's showing of probable cause, the petitioners claim, the magistrate violated the terms of the statute and made the presumption of detention created by Section 3142(f) irrebuttable.

■ In most instances, the trial court's decision to enforce or to quash a pretrial subpoena will be disturbed on appellate review only if clearly arbitrary and unsupported by the record in the case. *United States v. Nixon,* 418 U.S. 683, 702, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974); *In re Grand Jury Subpoena Served Upon Doe,* 759 F.2d 968, 971 (2d Cir.1985); *United States v. MacKey,* 647 F.2d 898, 901 (9th Cir.1981) *(per curiam ).* However, here we must review the correctness of the trial court's ruling in light of its interpretation of the statute. Thus we are presented a mixed question of law and fact and accordingly our review is plenary. *See,* Section II, *supra.*

■ The inquiry mandated under subsection (f) of the statute is directed not to the question whether probable cause existed to link the defendant with the crime.

Once the government makes a showing of probable cause that the defendant committed one of the enumerated acts this triggers the presumption that the defendant either constitutes a danger to the community or poses a risk of flight from justice. 18 U.S.C.A. § 3142(e).

At that point, it becomes the task of the defendant to come forward with evidence to meet his burden of production—that is, evidence to suggest that he is either not dangerous or not likely to flee if turned loose on bail. Under the statute he enjoys wide latitude in securing information to rebut these presumptions: "The person shall be afforded an opportunity to testify, to present witnesses on his own behalf, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." 18 U.S.C.A. § 3142(f). The procedural tools provided are used only to effectuate the inquiry mandated by subsection (f): "whether any condition or combination of conditions set forth in subsection (c) will reasonably assure the appearance of the person as required and the safety of any other person and the community...." The statute leaves for trial the defendant's opportunity to rebut the finding of probable cause. Thus, to the extent that a subpoena at the pretrial detention stage is merely an attempt to rehash the question of probable cause, the trial court may properly quash the subpoena.

But when the question is whether the defendant has successfully rebutted the presumption created in subsection (e), the judicial officer is directed to the four-part catechism of subsection (g). Factor (g)(2) permits the magistrate or the trial judge to consider "the weight of the evidence against the person." In order to make that determination, it may well be necessary to open up the issue of probable cause since

---

**14.** *United States v. Contreras,* 776 F.2d 51, 52 (2d Cir.1985); *Hazime,* 762 F.2d at 37.

**15.** In *United States v. Medina,* 775 F.2d 1398, 1402–03 (11th Cir.1985) *(per curiam ),* we hint-

ed, without explicitly holding, that a grand jury indictment was sufficient to establish probable cause under the statute. We today make explicit that which we suggested in *Medina.*

that too is a question of evidentiary weight. At that point the defendant is guaranteed by subsection (f) the various rights noted above, including the right to cross-examine government witnesses whose testimony led to the evidentiary finding of probable cause. Though the judicial officer retains discretion in such hearings "to curtail cross-examination based upon such criterion [sic] as relevancy, or to prevent a pretrial hearing from becoming a full-blown trial," still "the court should always exercise that discretion with the recognition that a pretrial detention hearing may restrict for a significant time the liberty of a presumably innocent person." *Delker,* 757 F.2d at 1398.

While the magistrate's ruling was error, it here furnishes no basis for a reversal. It is clear from the magistrate's order that the *ratio decidendi* of his decision to detain petitioners prior to trial was not based on factor (g)(2). His finding that there was great likelihood of flight was based on the nature of the offense, factor (g)(1), and on the history and characteristics of the petitioners, factor (g)(3). These constitute adequate bases to support the conclusion he drew. Accordingly, there was no prejudice and hence no reversible error.

D. Adequacy of the Trial Court's Order:

▮ The petitioners complain that the trial court's order of detention improperly relied solely on the findings and recommendations of the magistrate. Petitioners argue that the district court must undertake a *de novo* review of the factual posture of the case and provide its own findings of fact and statement of reasons for its decision.[16] We agree.

This question turns on the interpretation we give to 18 U.S.C.A. § 3142(i), which provides in relevant part that in order to issue a detention order under subsection (e), "the judicial officer shall—(1) include written findings of fact and a written statement of the reasons for the detention ..." and shall make other provisions relating to the detention situation as specified in (2), (3), and (4). The obligation to conduct such a hearing poses a question of statutory construction subject to plenary review. *Cathbake,* 700 F.2d at 656.

The language of the statute is stated in the imperative: the judicial officer "shall" in writing state his findings of fact and reasons for decision and he "shall" provide for confinement separate from convicted prisoners, affording the opportunity for consultation with counsel, and in a place easily available for appearance before the court. The question is whether "judicial officer" means only the magistrate at the first hearing, or also applies to the district court judge upon review of the magistrate's order.

While the legislative history is of no guidance whatsoever, 1984 U.S.Code Cong. & Ad.News, *supra,* at 3208, we note that five courts have considered this question and each has held that the district court must undertake plenary review. *United States v. Maull,* 773 F.2d 1479, 1481–85 (8th Cir.1985) *(en banc)*; *United States v. Leon,* 766 F.2d 77, 80 (2d Cir.1985); *United States v. Delker,* 757 F.2d 1390, 1394–95 (3d Cir.1985); *United States v. Williams,* 753 F.2d 329, 333 (4th Cir.1985); *United States v. Beesley,* 601 F.Supp. 82, 83 (N.D. Ga.1984). We think this is the proper interpretation for two reasons; accordingly we hold that the district court must undertake an *independent* review of these cases, enter its own findings in writing, and set forth the reasons supporting its decision, making provisions as set forth in subsection (i)(1) through (4).

First, as the court noted in *Delker,* 757 F.2d at 1394, Rule 9(a) of the Rules of Appellate Procedure requires that, if a district court refuses pretrial release, it "shall

---

**16.** The government virtually concedes the inadequacy of the trial court's order. In its Response to the petitioner's motion it merely states, *ipse* *dixit,* that the order was sufficient to permit appellate review.

state in writing the reasons for the action taken." Since magistrates traditionally play a preliminary role in these determinations, the fact that the Rule clearly requires additional written findings by "the district court" suggests that an independent review is required.

Second, and more conclusive, is the holding of the new Fifth Circuit in *United States v. Thibodeaux*, 663 F.2d 520 (5th Cir.1981). The court there considered an analogous provision of the 1966 Bail Reform Act, 18 U.S.C.A. § 3147, that was repealed by the adoption of the comprehensive 1984 Act. The court determined that, though the strict language of the 1966 Act itself did not speak to the question, nonetheless it implicitly:

> confers a responsibility on the district court to reconsider the conditions of release fixed by another judicial officer under 18 U.S.C. § 3146(d) as unfettered as it would be if the district court were considering whether to amend its own action. It is not constrained to look for abuse of discretion or to defer to the judgment of the prior judicial officer.

663 F.2d at 522; *United States v. DeMarchena*, 330 F.Supp. 1223, 1226 (S.D.Cal. 1971); *see also, United States v. Zuccaro*, 645 F.2d 104, 106 (2d Cir.) (*per curiam*), *cert. denied*, 454 U.S. 823, 102 S.Ct. 110, 70 L.Ed.2d 96 (1981); *Wood v. United States*, 391 F.2d 981, 984 (D.C.Cir.1968).

*Thibodeaux* applied to the earlier Act, but logic compels us to assume that when Congress enacts a new statute in place of another, chooses to continue a practice such as two layers of review below the appellate level, and offers no hint that it wishes to modify the court-provided standard of *de novo* review, it meant to import into the new statute the old standard. The 1984 Act works no modification of either the two-part review of the 1966 Act or the practice that the Fifth Circuit and a number of other courts saw fit to follow. Congress was undoubtedly aware of this court-made requirement and chose not to undo it.

*Maull,* 773 F.2d at 1482–83; *Delker,* 757 F.2d at 1394–95. In that case we follow suit and require that our district courts undertake *de novo* review of the pretrial detention determinations of the magistrates.

From this, it follows that the order entered by the district court below was inadequate. Its order of October 31, 1985, is but one sentence ratifying the findings of the magistrate. There was no independent fact finding and no clue as to that court's reasoning in reaching the conclusion that the petitioners should be detained. The order does not even address the statutory requirements set forth at Section 3142(i)(2) through (4). This terse order makes it impossible for this Court to fulfill its responsibility to review this decision consistent with our holding in Section II, *supra.* This was reversible error.

E. The Finding that Defendants Posed Flight Risks.

Finally, the petitioners submit that the determination below that they were more likely to flee than to remain to contest the charges was clearly erroneous.

The procedural irregularities below necessitate that this matter be remanded to the trial court for a new determination as to whether detention is warranted. That being the case, prudential considerations make it inappropriate to press on to the merits of the underlying question—whether petitioners ought properly to be detained under the provisions of the statute. Accordingly, we decline to consider this issue.

IV.

For the reasons foregoing, we find that the petitioner's motion for review of the order of detention is well taken. The hearing was held out of time in violation of the provisions of the statute; the trial court's order of detention was inadequate as a matter of law. Though the error was not prejudicial, and hence does not buttress our

disposition of the case, we hold as well that the magistrate and the trial court also improperly restricted the petitioners' efforts to rebut the presumption of flight. For these reasons, the motion for review is GRANTED and the order of pretrial detention is REVERSED and REMANDED with instructions to hold a *de novo* hearing under 18 U.S.C.A. § 3142 at which the merits of pretrial detention in this case are to be reconsidered.

IT IS SO ORDERED.

FAY, Circuit Judge, concurring in part, dissenting in part:

While concurring in most of Judge Johnson's Memorandum and Order, I add one word of caution about the labels we use. Saying something is a "mixed question of law and fact" can be deceptive because those words are usually followed by the expression, "allowing plenary review on appeal."

Personally, I prefer the language used by the Second, Fourth, and Fifth Circuits. However, I agree that, "While the characterization of the standard is somewhat different, ... in practice the scope of review is the same ..."

Whenever the issues presented to courts are intertwined with the credibility of witnesses and the evaluation of the weight to be given testimony, appellate courts should give great deference to those judicial officers "on the scene." The standard we articulate to do that is "clearly erroneous." Classifying issues as presenting mixed questions of law and fact should not be used by appellate judges to substitute their impressions and opinions for those who heard and saw the witnesses. This concerns me.

Judge Johnson makes it clear that "we will be chary of disturbing the purely factual findings of the trial court and will do so only if such findings are clearly erroneous." This approach should be the keystone to our review.

Having said that, I concur in Sections I, II, IIIA, IIIB and IIIC. I respectfully dissent from Section IIID and Section IV.

The magistrate held a hearing on September 5, 1985. The defendants were present and represented by counsel. The magistrate reviewed reports prepared by the United States Probation Office. Apparently the defendants offered no testimony and no evidence. The magistrate entered his written order on September 6, 1985. The indictment had been returned on September 4, 1985.

The United States District Judge conducted a hearing on October 3, 1985. Counsel for all parties presented their arguments but no one offered any additional evidence. In its Order denying relief from the magistrate's detention order, the District Court sets forth that it has carefully reviewed the defendants' motions and the detention order, has carefully reviewed the bail reports submitted by the United States Probation Office, and has carefully reviewed the transcript of the detention hearing before the magistrate. Thus, it affirmatively appears in this record that the United States District Judge personally reviewed everything there was to consider. Having done so, he concluded and found that no condition of release or combination of conditions will reasonably assure the appearance of the defendants. There is no indication that the District Judge deferred to the magistrate and his order does not merely ratify that of the magistrate. I simply do not understand what the District Judge is to do on remand.

I would affirm the order of pretrial detention.

CLARK, Circuit Judge, concurring in part and dissenting in part:

I concur in Parts I, II, III–A, III–C, III–D, III–E and IV of Judge Johnson's opinion.

I respectfully dissent, however, from Part III–B of his opinion holding that the

return of an indictment by a grand jury is sufficient to establish probable cause for purposes of § 3142(e).

## I.

The Supreme Court has stated that "the meaning of the statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). The statute at issue in this proceeding, 18 U.S.C. § 3142(e), clearly states that:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community *if the judicial officer finds that there is probable cause to believe that the person committed an offense* for which a maximum term of imprisonment of ten years or more is prescribed.... (emphasis added).

The plain meaning of this statement cannot be more simply and directly put than Congress has done in the very text of the statute: the rebuttable presumption favoring pretrial detention is not invoked unless or until "the judicial officer finds that there is probable cause to believe that the person committed an offense." The statute does *not* say "if a grand jury has found that there is probable cause" *nor* does it say that the presumption shall attach "if the judicial officer finds that a grand jury has returned an indictment." Nonetheless, rather than accepting this clear statement of Congress and adhering to its own admonition that "barring clear contrary indication, we must give words their usual, plain meaning," Majority opinion at 20, the majority opinion disregards Justice Frankfurter's admonition that "[a] judge must not

rewrite a statute, neither to enlarge nor to contract it" [1] and, in effect, rewrites the statute to read that the presumption shall come into play "if the judicial officer finds that there is probable cause to believe that the person committed an offense *or if a grand jury has indicted the person.*"

In addition to violating the injunction that judicial construction of a statute is not "an opportunity for a judge to use words as 'empty vessels into which he can pour anything he will'—his caprices, fixed notions, even statesmanlike beliefs in a particular policy," [2] the majority's rewriting of the statute also imputes a lack of knowledge and intelligence to Congress that is unwarranted. The legislation which created this statute was not hurriedly drafted, neither did it suffer from a lack of hearings and deliberate consideration by the House and Senate Judiciary Committees, through which it passed. There were numerous capable attorneys serving both as members of those committees and as committee staff, and it is inconceivable that that mass of legal talent would have allowed this piece of legislation to slip through without adding the simple phrase "or grand jury indictment" if that was what was really intended. On the contrary, Congress certainly was aware that the vast majority of defendants subject to pretrial detention hearings under this statute will have been charged by indictment; therefore, if it had intended to create an automatic presumption whenever an indictment is returned, it would equally certainly have said so. *See United States v. Allen*, 605 F.Supp. 864, 870 (W.D.Penn.1985).

Further support for my view that the judicial officer must conduct an independent assessment of probable cause following an evidentiary hearing is found in the fact that the majority's holding that no probable cause hearing need be held to review the evidence connecting the defendant with the alleged crime is inconsistent with § 3142(g) requiring that:

---

**1.** Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum.L.Rev. 527, 533 (1947).

**2.** *Id.* at 529.

**(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—

. . . .

(2) the weight of the evidence against the person;

. . . .

If the judicial officer conducts no independent probable cause hearing to determine the evidence linking the defendant and the alleged crime, he or she will have no evidence available which can be weighed to determine the strength of the case against the defendant as required by § 3142(g)(2).[3]

## II.

The legislative history of § 3142(e) also supports the notion that the judicial officer must conduct an evidentiary hearing in order to make an independent assessment as to the existence of probable cause. Prior to adopting the probable cause standard for triggering the rebuttable presumption in § 3142(e), Congress considered and rejected a "substantial probability" standard. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 18, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3201. Obviously, a substantial probability standard, since it is more demanding than probable cause, would have foreclosed any question as to whether an indictment was sufficient to trigger the presumption. However, even

that portion of the legislative history chronicling the rejection of the substantial probability standard indicates Congress intended that an independent assessment of probable cause be made by the judicial officer at the detention hearing. It states: "the fact that the judicial officer has to find probable cause will assure the validity of the charges against the defendant, and . . . any additional assurance provided by the 'substantial probability' test is outweighed by the practical problems in meeting this requirement at the stage at which the pretrial detention hearing is held." *Id.; see United States v. Allen*, 605 F.Supp. at 870. If, as the majority holds, the judicial officer is allowed to merely rubber stamp the probable cause finding of a grand jury, then his or her "finding" of probable cause serves in no way to "assure the validity of the charges against the defendant" and is thus directly contrary to the intent of Congress as expressed in this passage from the legislative history. In fact, such a rubber stamp "finding" is no finding at all.

## III.

In enacting the provisions for pretrial detention in the Bail Reform Act of 1984, Congress recognized the severe deprivation of the liberty of one not yet proven guilty, and therefore presumed innocent, who is detained prior to trial. As a result of this recognition, it took great care to set up adequate procedural safeguards so as to guarantee fairness to those against whom pretrial detention is sought.[4] Perhaps because it recalled that the grand jury originated as a tool of the executive and has been subject to abuse by the executive to

---

**3.** In my interpretation, the two Drug Enforcement Administration agents subpoenaed by the defendant would have testified at the probable cause hearing. The majority's substitution of a grand jury indictment for a probable cause hearing, coupled with its affirmance of the magistrate's quashing of defendant's subpoenas (*See* Majority's opinion at 1479), prevents the judicial

officer from effectively considering "the weight of the evidence against the person."

**4.** Repeated statements of this need for and concern with adequate procedural safeguards are found throughout the legislative history. *See* generally S.Rep. No. 225, 98th Cong., 1st Sess. 8–22, *reprinted in* 1984 U.S.Code Cong. & Ad. News 3182, 3191–3205.

achieve its ends down through the ages,[5] or because it was aware that even today the grand jury is thoroughly dominated by the prosecutor,[6] or perhaps even because it realized that " '[a]ny experienced prosecutor will admit that he can indict anybody at any time for almost anything before any grand jury,' "[7] Congress clearly indicated in the plain language of the statute and in the legislative history that an independent finding of probable cause by the judicial officer is required in order to "assure the validity of the charges against the defendant" before the rebuttable presumption of § 3142(e) is triggered. The holding of the majority that the mere fact of a grand jury indictment is sufficient to trigger this rebuttable presumption ignores these concerns and this intent of Congress.

For the foregoing reasons, I dissent and would require on remand a hearing at which the magistrate or the district court would take evidence and determine the issue of probable cause as so plainly required by the statute.

**5.** *See* Schwartz, *Demythologizing the Historic Role of the Grand Jury,* 10 Am.Crim.L.Rev. 701 (1972).

**6.** *See* White & Ianniello, *Cases on Grand Jury Abuse,* in Parallel Grand Jury and Administrative Agency Investigations 547–48 (1981); Morse, *A Survey of the Grand Jury System* (pts. 1–3), 10 Or.L.Rev. 101, 217, 295 (1931). *See also* Antell, *The Modern Grand Jury: Benigned Supergovernment,* 51 A.B.A.J. 153, 154 (1965).

"Though free to take part in the interrogation the grand jurors must place enormous trust in the prosecutor's guidance. It is he, after all, who tells them what the charge is, who selects the facts for them to hear, who shapes the tone and feel of the entire case. It is the prosecutor alone who has the technical training to understand the legal principles upon which the prosecution rests, where individual liberty begins and ends, the evidential value of available facts and the extent to which notice may be taken of proposed evidence.

"In short, the only person who has a clear idea of what is happening in the grand jury room is the public official whom these twenty-three novices are supposed to check. So

that even if a grand jury were disposed to assert its historic independence in the interest of an individual's liberty; it must, paradoxically, look to the very person whose misconduct they are supposed to guard against for guidance as to when he is acting oppressively." Antell, *The Modern Grand Jury: Benigned Supergovernment,* 51 A.B.A.J. 153, 154 (1965).

Fine, *Federal Grand Jury Investigation of Political Dissidents,* 7 Harv.C.R.–C.L.L.Rev. 432, 440 n. 32 (1972).

**7.** *United States v. Dionisio,* 410 U.S. 1, 23, 93 S.Ct. 764, 777, 35 L.Ed.2d 67 (1973) (Douglas, J., dissenting) (quoting Campbell, *Delays in Criminal Cases,* 55 F.R.D. 229, 253 (1972)). Judge Campbell goes on to remark: "A preliminary hearing before a magistrate to determine probable cause with the accused participating through counsel would be a great improvement over the present archaic indictment." 55 F.R.D. at 254. That recommendation tracks to a great extent the procedure Congress intended to set up for pretrial detention determinations through § 3142(e).