**UNITED STATES of America**

v.

**Terry HOWARD.**

**No. 88–364–CR.**

United States District Court,
S.D. Florida.

Aug. 11, 1988.

Bruce L. Udolf, Asst. U.S. Atty., Miami, Fla., for plaintiff U.S.

Gary Killin, Miami, Fla., for defendant Howard.

## ORDER

SCOTT, District Judge.

This cause is before the Court for *de novo* review of the United States Magistrate's determination to detain the Defendant Terry Howard pending trial pursuant to 18 U.S.C. § 3142(e). *United States v. Hurtado,* 779 F.2d 1467 (11th Cir.1985). The Court has conducted a complete review of the record before the Magistrate, including the transcript of the Magistrate's hearing, Pretrial Services Report and court file. Additionally, the Court permitted oral argument and, with the approval of the parties, reviewed *in camera* investigative materials submited by both the Government and the Defendant to determine the underlying facts as well as the strength of the Government's evidence.

## I.

This controversy was originally filed in Florida state court where Terry Howard was charged with multiple counts of sexual battery. Fla.Stat. § 794.011. The State dismissed these charges when the United States Government filed its indictment. Howard is presently charged with various Mann Act violations. 18 U.S.C. § 2422; 18 U.S.C. § 2.

Howard and co-Defendant Joe Robinson are accused of enticing and coercing various women to cross state lines and enter the Southern District of Florida for the purpose of engaging in sexual activity under such circumstances as would constitute a criminal offense under Florida law (sexual battery). The scheme involved Howard and Robinson posing themselves as entrepreneurs in the motion picture and recording production business. After obtaining the names of prospective actresses and models, the victims would be contacted in locations such as Missouri and Indiana. Defendants would lure the victims to Miami with the prospects of working with such well known individuals as Michael Mann of the Miami Vice television show. They would also represent themselves as associated with certain actors and actresses—whose names would be recognizable—such as Phylicia Rashad of the Bill Cosby Show.

The victims would be required to expend funds for travel and lodging. They would be given a script to read or a contract to review. Of course, none of the victims would be reimbursed and none of the scripts were genuine. When the would-be actresses arrived in Miami, they would usually be taken to a hotel where the Defendants would continue to portray their roles as entertainment "big-wigs." Ultimately, one or both of the Defendants would engage, or attempt to engage, in sexual conduct with the victims.

While only four counts are presently charged, the Government tenders proof that this scenario repeated itself on as many as twenty occasions and with the exception of four cases, each resulted in sexual assault. All of the victims who were sexually assaulted claim they were forced to submit to the sexual act against their will, either through threats of violence against the victim or her family unit. Several of the victims were forced to feel what was represented to be a gun in a duffle bag.

After the victims returned home, the Defendants attempted to avoid detection by continuing their threats. Howard and Robinson would constantly telephone the victims and threaten them and their families. They were threatened with dismemberment and bodily injury. As part of their scheme, the Defendants would elicit from the victims details of their family members, then use the information as a basis of the threat campaign.

Several of these intimidating conversations were recorded by the victims. During as least two of these conversations, Detective Richard Trevor of the St. Louis Police Department spoke with Robinson. Trevor and the victim were, in turn, threatened with death. The scenario continues, but we feel this is a sufficient review of the evidence for the purpose of the present motion. The Government advises that additional counts of wire fraud may be filed against each Defendant.

## II.

Terry Howard is a thirty year old citizen of the United States. The Defendant lives at home and has family support. He has been self-employed for the past six years. The Defendant reports an income of approximately $500.00 per month.

The Defendant's criminal record is not insignificant. He has been charged with various crimes beginning in 1979. These crimes include robbery, battery, forgery, grand theft and sexual battery. Howard was acquitted of the robbery charge; and, the State dismissed the sexual battery case. Howard has been convicted of misdemeanors including battery; he has been convicted of felonies, including grand theft and possession of cocaine. Significantly, he has been placed on probation; violated his probation; and sentenced to state prison.

## III.

The Government has sought pretrial detention of both Howard and Robinson in a timely manner. The United States Magistrate conducted a hearing in which the parties proceeded by proffer. *United States v. Gaviria*, 828 F.2d 667 (11th Cir.1987). At the end, the Magistrate detained both Defendants based on a finding that they constituted a danger to the community and

the victims. Specifically, the Magistrate stated:

> If it was one case of an issue of a man being alleged to have raped someone and the issue was consent, that's a jury question. We have, apparently, 16 instances here where a woman has claimed that she has submitted to sexual relationships against her will and/or was conned into it, but the evidence is such that there was a scheme here of such, as such, that the women in our community, in our country, are in danger from these two men, at best who are con men, and at worse are the kind of men who should not be on the streets.

The Magistrate did not enter a formal written order. *See United States v. King*, 849 F.2d 485 (11th Cir.1988). Further, the Magistrate rejected detention based on flight. ("I would concede for the sake of argument, not only that these men are probably a good risk on bond ... that they will not flee." T. 48). The government does not appeal that determination. By this motion, Howard challenges the Magistrate's order detaining him based upon danger to the community. We note that co-Defendant Robinson did not appeal the Magistrate's detention order. 18 U.S.C. § 3145.

### IV.

The Court has conducted the appropriate two-prong analysis, *United States v. Hurtado*, 779 F.2d 1467 (11th Cir.1985), in light of the clear and convincing standard which must be met in order to pretrial detain based on danger. *United States v. Medina*, 775 F.2d 1398 (11th Cir.1985). While it . is true that Howard's role is less egregious than Robinson, we nonetheless easily conclude that the Government has met its burden and the Magistrate's decision should be affirmed. *See United States v. Simpkins*, 826 F.2d 94 (D.C.Cir.1987); *United States v. Jackson*, 823 F.2d 4 (2nd Cir.1987); *United States v. Rodriguez*, 803 F.2d 1102 (11th Cir.1986). We perceive no conditions of release which could be imposed that would ensure the safety of the victim-witnesses in this case. The past legacy of criminal conduct of Robinson and Howard,

including threats of violence directed against the victims, their families and even police officers, is ample proof of their willingness and predisposition to engage in future criminal activity in order to obtain their illegal goals. In short, this case presents the precise scenario in which Congress intended to authorize pretrial detention based on danger. *See* S.Rep. 225, 98th Cong., 1st Sess. (1983).

Accordingly, it is ORDERED as follows:

1. The Magistrate's Order is affirmed.

2. The Government has established by clear and convincing evidence that no conditions of release will reasonably assure the safety of victims-witnesses and the community.

3. Terry Howard shall have the benefit of statutory provisions provided in 18 U.S. C. § 3142(j).