able); *In re Kemble,* 776 F.2d 802, 805–06 (9th Cir.1985) (same).

We thus also reject PBGC's claim that orders under the mandatory portion of Section 157(d) are appealable, whereas orders under the discretionary portion are not. Although the distinction between the mandatory and discretionary portions of Section 157(d) surely dictates the scope of appellate review of the respective decisions, it is in no way pertinent to the question of whether either type of order is final or interlocutory. We also reject PBGC's contention that *Mercantile National Bank v. Langdeau,* 371 U.S. 555, 557–58, 83 S.Ct. 520, 521–22, 9 L.Ed.2d 523 (1963), controls our decision. In *Mercantile,* the issue concerned which state court had proper venue to consider an action against two national banks. The case had nothing to do with bankruptcy or Section 157(d). Moreover, the issue was appealable under state law, and such an appeal had occurred. The Court's holding thus reflected a desire to avoid "long and complex litigation which may all be for naught if consideration of the preliminary question of venue is postponed until the conclusion of the proceeding." *Id.* at 558, 83 S.Ct. at 522. As our discussion, immediately *infra,* of the "collateral order" doctrine reveals, we perceive no such economies in hearing the present appeal.

 The PBGC argues that an order granting or denying a reference is otherwise appealable as a "collateral order" under the limited exception defined in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Under *Cohen,* the collateral order exception applies to a small class of decisions that (1) conclusively determine a separate and collateral claim, (2) are "too important to be denied review", and (3) cannot await final judgment because no effective review can be held. *Id.* at 546–47, 69 S.Ct. at 1226. We do not believe that the *Cohen* exception applies here. Orders denying revocation of a reference to the bankruptcy court do not conclusively determine any substantive issue; they merely address where that issue will initially be decided. Such orders also remain "subject to review upon final judgment." *In re King Memorial Hospital,* 767 F.2d at 1510. If, for example, the decision denying withdrawal were deemed error on the ultimate appeal, the case could be remanded for *de novo* review by the district court of the record in the bankruptcy proceeding. This review would thus correct any difference in outcome due to the deference district courts must give certain decisions of bankruptcy courts.

We therefore hold that Judge Keenan's order denying withdrawal of the reference is not appealable and consequently that a stay should not be granted. We grant LTV's and USWA's motions to dismiss the appeal. We decline to award damages or double costs to USWA in light of the fact that the appealability issue was one of first impression in this Circuit.

**UNITED STATES of America, Appellee,**

v.

**James COONAN, Defendant-Appellant.**

**No. 1298, Docket 87–1207.**

United States Court of Appeals,
Second Circuit.

Argued May 13, 1987.

Decided Aug. 19, 1987.

Gerald L. Shargel, New York City (Vivian Shevitz, of counsel), for defendant-appellant.

Mary Lee Warren, Asst. U.S. Atty., S.D. N.Y., New York City (Rudolph W. Giuliani, U.S. Atty. S.D.N.Y., Bruce A. Green, Asst. U.S. Atty., S.D.N.Y., of counsel), for appellee.

Before VAN GRAAFEILAND*, PRATT, and ALTIMARI, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

On this expedited appeal from an order of the United States District Court for the Southern District of New York (Sand, J.) granting the government's motion for pretrial detention of defendant James Coonan, we must consider the extent of the government's responsibilities to ensure that a prompt detention hearing is held where the government seeks pretrial detention under the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.* Since requiring the government to have insisted on a hearing within the strict time requirements of the act would, in the circumstances presented here, exalt form over substance, we conclude (1) that the government could seek pretrial detention of Coonan even though the detention hearing did not occur within the five days allowed by § 3142(f), and (2) that on the basis of the evidence tendered at the hearing the district court properly ordered Coonan detained. We therefore affirm.

---

* Judge Van Graafeiland was designated subsequent to oral argument, pursuant to Second

## DISCUSSION

The act contains strict procedural requirements, designed to ensure that defendants are not held pretrial without due process. Section 3142(f) provides in relevant part:

> Detention hearing.—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions * * * will reasonably assure the appearance of the person as required and the safety of any other person and the community—
>
> (1) upon motion of the attorney for the Government * * *.
>
> * * * * * *
>
> The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of the person may not exceed five days, and a continuance on motion of the attorney for the Government may not exceed three days.

Here, Coonan's initial appearance occurred when he was arraigned in the Southern District of New York before Judge Griesa in Part I on Thursday, April 2. The government moved at that time for pretrial detention of Coonan and his four co-defendants. At the time, all of them were being held in state custody. The government also sought a three-day continuance, permitted under the act, and defendants apparently requested an additional day, so that the hearing could be held on Wednesday, April 8 (four "statutory days" after April 2, since "days" under the act does not include Saturdays, Sundays, or holidays, *United States v. Melendez-Carrion*, 790 F.2d 984, 991 (2d Cir.1986)), which is the date that had been set down for the first pretrial conference in the case by Judge Leval, to whom the case had been assigned.

The hearing was not, however, held on April 8. On Monday, April 6, Judge Leval

---

Circuit Rule 0.14, to replace Judge Kaufman, who recused himself.

withdrew from the case, and on April 8, Judge Sand was chosen at random to replace him. During a meeting on that day in Judge Sand's chambers, the first conference was rescheduled for April 15.

When that first conference was held, new counsel for Coonan, Gerald Shargel, moved to have bail set for his client. He argued that the district court lacked jurisdiction to order detention under the act because no hearing had been held within the maximum five days allowed for continuances following a defendant's initial appearance. Judge Sand ordered expedited briefing of Coonan's jurisdictional arguments, and held a hearing on April 22, following which he ruled that he had jurisdiction to detain Coonan without bail, and he went on to grant the government's motion for detention, holding that there was a significant risk of flight and that Coonan was likely to seek to intimidate witnesses.

### A. *Jurisdiction of the District Court.*

Coonan argues that the language of § 3142(f) means that the government may not seek his detention. He relies on *United States v. Payden,* 759 F.2d 202 (2d Cir.1985), as holding that any departure from the procedural requirements of § 3142 compels the district court to set reasonable conditions for release.

On its face, *Payden* does require a strict reading of the act. There, Payden's initial appearance took place on October 17, 1984, five days after the act took effect. Apparently unaware of the passage of the act, the government did not immediately seek pretrial detention, but did so two weeks later. The district court granted the government's motion, but we reversed, saying:

> The district court was understandably concerned about the lack of forewarning of the passage of the [act]. * * * However, this regrettable circumstance does not permit us to overlook incorrect application of the Act's provisions. * * * Moreover, the fact that a hearing was scheduled as soon as possible after notice of the Act's provisions was received * * does not alter the fact that the hearing

did not occur on Payden's first appearance. *Were we to hold that "as soon as possible" was close enough, we would be encouraging imprecise application of procedural requirements. This we should not do.*

759 F.2d at 205 (emphasis added). Despite this broad language, however, we are convinced that a literal reading of the time requirement of § 3142 in the circumstances of this case would neither make sense nor serve any of the purposes of the act's procedural protections.

Two factors combine to persuade us that the government was not required here to see that a detention hearing was held by April 8. First, Coonan was, at all times relevant to this appeal, being held in state custody, without bail. Second, Coonan's first counsel, Kenneth Aronson, made representations to AUSA Warren, and conducted himself consistent with the assumption, that "bail was not an issue" for Coonan.

■ The fact that Coonan was in state custody means that the liberty interest he claims is, at best, severely attenuated. *See United States v. King,* 818 F.2d 112, 114–15 (1st Cir.1987) (*per curiam*) ("Until King's release from state custody became imminent, a detention hearing could have had no real meaning."). Coonan argues, however, that it is possible he would have been able to obtain bail in the state case had he obtained it here. He never explains, however, how release on the federal charges would have persuaded the state supreme court justice to reconsider his decision to deny Coonan bail; indeed, it is equally plausible that the state judge would be less likely to grant bail if he believed that Coonan would be released but for his state-custody status. We need not speculate, however, on the somewhat elusive connection between Coonan's state and federal custody, since it is in any event a far less significant deprivation of liberty to deny him bail in the federal prosecution than it would be were he not incarcerated by the state.

■ Moreover, it was reasonable for the government to rely on the representations

of Aronson, who told Warren that "bail was not an issue". In addition, even if defense counsel did not explicitly agree to the "accommodation" offered by Warren on April 2 to the defendants in state custody ("that the government would agree because bail was 'academic' in the federal case, to consent to the defendants' bringing on a detention hearing when and if the circumstances of their state custody change"), their subsequent actions—including Aronson's failure to attend the April 8 meeting in Judge Sand's chambers, and the silence of all defense counsel who were at that meeting, including Aronson's "cover" attorney, when asked by Judge Sand's secretary whether any bail motions were anticipated at the April 15 conference—indicate strongly that all defense counsel were proceeding on the assumption that they would seek detention hearings when, and only when, their clients' state-custody status changed. In short, until Aronson was superseded as Coonan's counsel, everyone involved in the case—the government, the district court, and Coonan—regarded bail as a moot question. Since defense counsel conducted himself based on that assumption, it was not improper for the government to do so as well.

■ Coonan, however, would have us hold that the statutory right to a detention hearing within, at most, five days of the initial appearance is not waivable. This we decline to do, since it would convert the time requirements of the act into a potential trap, available to defendants, that would undermine the functioning of the act, and would also require meaningless, ritualistic hearings in situations where no one wants them.

As to the first possibility, the hypothetical raised by Judge Sand in his excellent opinion below both explains the danger and comes remarkably close to the facts here:

[T]he Government moves for detention at the first appearance before a judicial officer and the defendant represented by counsel, says, in substance, your Honor, that isn't necessary, there is no need for a hearing, I consent. And then six days thereafter [he] moves for the setting of reasonable conditions for bail on the grounds that the hearing could not be waived and the time limitation precluded application of the statute.

Presumably the only safe way the government could avoid such a trap would be to insist on a detention hearing in every case. No matter how strenuously a defense attorney assured the government that bail was not sought and was not an issue, the government would insist on holding the hearing, aware that a substitution of defense counsel is always a possibility. But it would serve no purpose to force the parties to go through the motions of a hearing, when the defendant has no liberty interest at stake, does not seek release, and does not wish to expend scarce resources on attorney's fees for a meaningless bail hearing.

While treating the government's burden to see to a detention hearing as less than absolute could be viewed as somewhat at odds with the broad language of *Payden*, that language spoke to the quite different statutory imperative of addressing the detention issue at the initial appearance. *Payden's* strict approach is appropriate for that requirement, since failure to hold the hearing, or make provision for a short continuance, at the initial appearance means that no attention would have been paid to the detention of the defendant, a situation raising grave constitutional problems. *See King*, 818 F.2d at 115 (distinguishing *Payden* by noting that where defendant is in state custody, "[h]e was not first incarcerated without process, and then belatedly accorded process [as in *Payden* ]"). Here, the initial appearance included a discussion of bail during which it was made clear that bail was not an issue, and at which a continuance was granted. Having taken the steps at the arraignment required by *Payden*, the government should not now be held to a still more onerous burden.

Our conclusion is supported by subsequent decisions interpreting the act. For example, *Melendez-Carrion*, 790 F.2d 984, adopted a flexible approach even to the "initial appearance" requirement that was the direct target of the strict language of

*Payden.* The defendants' technical "initial appearances" in *Melendez-Carrion* were in the districts of their arrests, for the sole purpose of effecting their transfer to the District of Connecticut, where they were to be prosecuted, and where detention hearings were then held. We rejected defendants' challenge to the failure to hold the detention hearings in the districts of arrest, saying, "[A] removal hearing may precede a detention hearing, leaving the latter normally to occur in the district of prosecution after removal." *Id.* at 990. Thus, even the requirement that the hearing occur at the defendant's initial appearance, the procedural protection most implicated by *Payden's* strict reading of the act, may be read flexibly in circumstances not anticipated by congress. *See United States v. Dominguez*, 783 F.2d 702, 704–05 & nn. 2–3 (7th Cir.1986).

▆▆▆ Moreover, the societal concerns presented here, assuring that Coonan appears for trial and securing the safety of government witnesses, are at the heart of the criminal justice system itself, and cannot be ignored. At the least, these important interests demand an application of the act that makes sense. To create a rigid system that would require meaningless and unwanted hearings, that would protect liberty interests that are slim if not illusory, and that would allow defense attorneys to frustrate the functioning of the act itself (as arguably, if unintentionally, happened here), would not make sense, and we decline to do it. Thus, we hold that where a defendant is otherwise incarcerated, and where defense counsel adopts a position that bail is not an issue and that an immediate hearing is unnecessary, the government is not precluded from seeking pretrial detention, even if the hearing thereon is held more than five "statutory" days after the initial appearance. While a defendant is of course free at any time, even while in state custody, to bring on the detention hearing in order to clarify his federal status, the government is not barred from seeking detention when he does so. Moreover, the government must see that the hearing is timely held when a defendant's state-custo-dy status changes so that his liberty interest becomes viable.

▆▆▆ Coonan also argues that, even if the government could permissibly have sought detention at the time of the first conference before Judge Sand on April 15, there was no just cause for the further delay between then and April 22, when Judge Sand actually held the hearing and rendered his decision. We reject this argument. Coonan raised in the district court a difficult issue of interpretation of a still-new statute, one that Judge Sand justifiably took time to consider and decide, after briefing by counsel. Indeed, we find a single week to have been commendable as a quick and responsible reaction to the situation.

We caution the government that it should not take our decision as *carte blanche* to ignore the procedural requirements of the act. The U.S. attorneys' offices in this circuit would be well advised to be very careful in seeing that the procedures set forth in § 3142(f) are conformed with. *Cf. King*, 818 F.2d at 115 n. 3 (outlining procedure to ensure adherance to act's time requirements). The unusual circumstances presented here—the continuing state incarceration of Coonan, the representations made by his counsel, and the natural lag and perhaps confusion that arose when the case was transferred from one judge to another—are unlikely to recur with great frequency, and it will be a rare confluence of events that permits departure from the time limits of the act, to which *Payden* requires considerable judicial, and prosecutorial, deference.

## B. *Merits of the Detention Decision.*

The substance of the district court's decision to order pretrial detention of Coonan requires little comment. Judge Sand found both that Coonan presented a significant risk of flight (and implicitly that no condition or combination of conditions would reasonably assure his appearance at trial), and that there was a significant risk of harm to government witnesses. The government's evidentiary proffer amply supports both conclusions.

 As to risk of flight, Coonan had been a fugitive for close to four months while wanted on the state and federal arrest warrants for which he is currently incarcerated. Nor did his fugitive status end by a voluntary surrender; rather, he was captured by law enforcement agents. Recent flight from justice, particularly on the same charges for which detention is sought, is a strong indication of a serious risk of flight. *See United States v. Shakur*, 817 F.2d 189, 199 (2d Cir.1987) (defendant's "history [of flight] is particularly important [when] not some incident remote in time and unrelated to matters at hand [but r]ather * * * was precisely to avoid the charges now pending against him").

 We do note, however, in connection with the district court's conclusion on Coonan's risk of flight that the court did not make an explicit finding that no condition or combination of conditions would assure Coonan's appearance for trial. *Cf. United States v. Berrios-Berrios*, 791 F.2d 246, 251 (2d Cir.1986). It is clear, however, that the court did consider the proper factors, concluding that each weighed against Coonan's position; thus, a finding that no conditions would assure Coonan's appearance was implicit in his denial of bail. Judge Sand questioned counsel at length about what conditions he would propose to assure Coonan's appearance, and rejected them as inadequate by, in effect, saying that the risk of flight was still present. While the determination of Judge Sand is sufficiently clear in this case, we caution district judges that, to avoid any ambiguities in the future, they should make explicit their findings with regard to the adequacy of possible conditions for release.

 The government's proffer with regard to the danger of harm to prosecution witnesses was more than adequate. Coonan attacks the credibility of the government's information, but the statements of undercover police officers and associates of Coonan, even when presented through the proffer of the assistant United States attorney, provided sufficient basis to find that Coonan had in the past threatened witnesses and presents a serious risk of doing so

again. The factual findings of the district court as to risk of harm to witnesses are therefore not clearly erroneous.

## CONCLUSION

Having concluded that in the particular circumstances of this case the district court properly exercised jurisdiction to hold a detention hearing, and that the court properly granted the government's motion for pretrial detention, we affirm the order of the district court.

ALTIMARI, Circuit Judge, dissenting:

Because the majority does not follow the clear language of the Bail Reform Act, 18 U.S.C. § 3142(f), disregards the teachings of *United States v. Payden*, 759 F.2d 202, 204 (2d Cir.1985) ("Where statutory language is clear and unambiguous, we are not at liberty to adopt an interpretation different from that directed by the language."), and impermissibly finds an *implied* waiver of Coonan's statutory right, *see e.g., Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (requiring knowing and intelligent waiver of rights), I respectfully dissent.