**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John Edward CLARK, a/k/a Eddie
Hatcher, Timothy Bryan Jacobs,
Defendants–Appellants.**

**No. 88–5079.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1988.

Decided Jan. 9, 1989.

---

Stephanie Yolanda Moore, Center for Constitutional Rights, William Moses Kun-

stler, New York City, Bob Warren, Garland, Tex., (Alan Gregory, Christic Institute South, Barry Nakell, Chapel Hill, N.C., on brief), for defendants-appellants.

John Stuart Bruce, Asst. U.S. Atty. (Margaret Person Currin, U.S. Atty., on brief) for plaintiff-appellee.

Before WINTER, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN, CHAPMAN, WILKINSON, and WILKINS, Circuit Judges.

WILKINS, Circuit Judge:

John Edward Clark, a/k/a Eddie Hatcher, and Timothy Bryan Jacobs appeal from a district court order of detention pending trial on criminal charges. We affirm.

## I.

On February 1, 1988 Defendants allegedly took 21 people hostage at gunpoint in a newspaper office in Lumberton, North Carolina, in an effort to focus public attention on what they claimed was discrimination against blacks and Indians. Although they released some of the hostages throughout the day, others were detained for approximately nine hours until Defendants surrendered to federal agents. On February 2 Defendants, accompanied by their attorney, made their initial appearance before a United States Magistrate. They were formally charged with detaining and threatening to kill hostages in violation of the Hostage Taking Act, 18 U.S.C.A. § 1203 (West Supp.1988), and unlawfully making and possessing a sawed-off shotgun in violation of the National Firearms Act, 26 U.S.C.A. §§ 5861(d), (f) (West 1980). The transcript of the proceedings before the magistrate clearly shows that at the beginning of the hearing Defendants were placed under oath and questioned regarding their educational backgrounds, the possible influence of any intoxicants, their medical conditions, and their ability to understand and participate in the proceedings. Hatcher responded that he had attended college for five years, and Jacobs stated

that he was a high school graduate. Both Defendants denied being under the influence of any intoxicants, and indicated that they were able to understand and participate in the proceedings.

When advised of the charges, Defendants indicated that they understood them. The magistrate also advised them of their "right to be considered for bail or release on conditions pending the time this case is in the court." At this point in the proceedings the government attorney moved for detention pending trial and informed the magistrate that "[p]ursuant to my conversations with Mr. Cunningham, [Defendants'] attorney, we agree that it would [be] in the best interest of both his client[s] and the body politic at large that they be detained. Our agreement is, I think, that they will waive a detention hearing." Mr. Cunningham, in the presence of Defendants, represented to the court that this was a correct statement of the agreement. On the basis of this agreement by which Defendants expressed their desire not to be released, the magistrate issued a detention order without receiving additional evidence.

An indictment was returned on February 9 charging Defendants with conspiracy to violate sections 1203 and 5861 and related substantive counts. On February 11 Defendants moved to reopen the detention hearing. The magistrate offered to set the hearing for Friday, February 12, Tuesday, February 16, or Wednesday, February 17.[1] Defendants' counsel elected to proceed on February 17. After a day-long hearing, the magistrate ordered Defendants held pending trial. In the detailed detention order issued February 18, the magistrate stated his finding that "the defendants have failed to rebut the presumption that no condition of release [would] reasonably assure the safety of any other person and the community."

Defendants immediately moved to reopen the detention hearing to submit new evidence. The magistrate granted the motion and held another hearing on February 19. The magistrate again ordered the Defendants detained, concluding that he could "construct no combination of conditions of release which [would] assure the court of the safety of any other person, including that of the defendants themselves, and the community."

Defendants thereafter moved for review of the detention order by a district judge. After holding a hearing and performing a *de novo* review, the district court found "that the Magistrate's ruling on detention was supported by clear and convincing evidence at the time it was made and that the evidence support[ed] continuation of the order in force at [that time]." The district court also denied Defendants' subsequent motion to vacate the detention order on the ground that a timely detention hearing was not held.

On appeal, the majority of a three-judge panel reversed the detention order "as fatally flawed by the failure to hold a timely detention hearing," ordering that the district court release Defendants on appropriate conditions. *United States v. Clark*, No. 88–5079, slip op. at 4 (4th Cir. June 30, 1988), [850 F.2d 690 (table)]. (unpublished). Pursuant to the mandate of this court, Defendants were released on July 6. However, on August 3, rehearing en banc was granted by a majority of the active members of this court. Subsequently, on August 26, the mandate was recalled and the detention order was reinstated. Jacobs promptly surrendered to authorities. Hatcher refused to do so and remained a fugitive until he was captured a few days prior to the scheduled trial date. Defendants' trial commenced on September 26 and had not concluded by the day of oral argument, during which time Defendants remained in custody. On October 6, this court issued a memorandum order affirming the district court detention order and reserving the right to file this opinion.

## II.

Pursuant to the Bail Reform Act, a judicial officer shall detain a defendant pending trial if he finds by clear and convincing evidence "that no condition or combination

---

1. Monday, February 15 was a federal holiday.

of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C.A. §§ 3142(e), (f). Upon motion of the government for detention, "[t]he judicial officer shall hold a hearing to determine whether any condition or combination of conditions ... will reasonably assure the appearance of the person as required and the safety of any other person and the community." Section 3142(f).

Section 3142(f) further provides that:

The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of the person may not exceed five days, and a continuance on motion of the attorney for the Government may not exceed three days.

At the detention hearing, a defendant is "afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise." *Id.* In making a determination on detention, the judicial officer must consider certain factual matters concerning:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person ...; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C.A. § 3142(g). A detention order must "include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C.A. § 3142(i)(1). A defendant ordered detained by a magistrate may seek *de novo* review in the district

court. 18 U.S.C.A. § 3145(b); *United States v. Williams,* 753 F.2d 329, 333 (4th Cir.1985).

■ At Defendants' initial appearance the magistrate determined by direct questioning of Defendants that they were able to understand and participate in the proceedings. He specifically informed Defendants of their right to a detention hearing and with the assistance of counsel they waived that right because they desired to remain in custody for their own protection. Based on this waiver, the magistrate entered a short detention order without either conducting an evidentiary hearing pursuant to section 3142(f) or preparing a detailed order of written findings of fact and a written statement of the reasons for detention as required by section 3142(i). Defendants now contend that they are entitled to release arguing that they had an absolute, unwaivable right to a detention hearing within at most five days of their initial appearance, notwithstanding their representation that they did not wish to be released because they feared for their safety. The panel majority agreed and held that Defendants could not waive either the time requirements or the detention hearing itself. Holding further "that the magistrate's failure to hold a detention hearing on February 2, 1988, or within five calendar days thereof constitutes a flat violation of the critical time requirements of 18 U.S. C. § 3142(f)," slip op. at 4 (citation omitted), the panel found that the appropriate remedy was release of Defendants under appropriate conditions. We now hold that both the time requirements and the detention hearing itself provided for in section 3142 are waivable. And, in cases where the requirements of the Bail Reform Act are not properly met, automatic release is not the appropriate remedy.[2]

### III.

Accepting the premise that "the procedures under section 3142 of the Act must be strictly followed as a precondition to

---

**2.** *See United States v. Hurtado,* 779 F.2d 1467 (11th Cir.1985) (although the detention hearing was untimely, the court remanded the case to

the district court with instructions to hold a *de novo* hearing.)

detention," *United States v. Al–Azzawy*, 768 F.2d 1141, 1145 (9th Cir.1985), the requirements of section 3142 must still be applied with common sense, *United States v. Malekzadeh*, 789 F.2d 850, 852 (11th Cir.1986). Rigid application of the Act when a defendant desires to remain in custody for his own protection is illogical and "exalt[s] form over substance." *United States v. Coonan*, 826 F.2d 1180, 1182 (2d Cir.1987).

In *Coonan*, a detention hearing was not held until after expiration of the statutory time limits because defense counsel had informed the government that "bail was not an issue." The court rejected the defendant's argument that the statutory right is not waivable "since it would convert the time requirements of the act into a potential trap, available to defendants, that would undermine the functioning of the act, and would also require meaningless, ritualistic hearings in situations where no one wants them." *Id.* at 1184.

The Act affords certain rights to defendants through procedural rules and defendants may voluntarily and knowingly waive those rights. If defendants can waive fundamental constitutional rights such as the right to counsel, *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), or the right to a jury trial, *Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), surely they are not precluded from waiving procedural rights granted by statute. Here, review of the transcript of the magistrate's hearing on February 2 clearly shows that Defendants, who were represented by counsel, voluntarily and knowingly waived a detention hearing.

## IV.

Although a defendant may waive an immediate detention hearing, this waiver is not an absolute, final relinquishment of all rights under the Bail Reform Act. When a defendant who has waived an immediate detention hearing later requests a hearing, one must be held within the procedural requirements of section 3142. In this sense, Defendants' "waiver" of an immedi-ate detention hearing can be viewed as a request for an indefinite continuance for good cause.

In a similar situation in *Malekzadeh*, where the defendant made no objection to a four-day continuance on motion of the government, the court found no violation of the Act despite the three-day limit under section 3142(f), reasoning that "common sense clearly tells us that the defense counsel implicitly requested that the hearing be continued [within the five days allowed on his own motion]." 789 F.2d at 852. Applying the same common sense here, Defendants implicitly requested an indefinite continuance for good cause as allowed under section 3142(f)—good cause being their concern for their personal safety. When Defendants later requested a detention hearing, one was held within five workdays on a date chosen by defense counsel. *See* Fed.R.Crim.P. 45(a); *United States v. Melendez–Carrion*, 790 F.2d 984 (2d Cir.1986).

## V.

Having found that Defendants waived an immediate detention hearing and ultimately received a timely hearing when requested, we now turn to the merits of the detention order. Although the district court review of a magistrate's detention order is *de novo*, our review of the final detention order of the district court is under a clearly erroneous standard. *United States v. Williams*, 753 F.2d at 333.

We begin by recognizing that in addition to being indicted on counts alleging violations of the Hostage Taking Act and the National Firearms Act, Defendants were charged with use of firearms in the commission of a crime of violence in violation of 18 U.S.C.A. § 924(c) (West 1976 & Supp.1988). This charge gave rise to a rebuttable presumption that "no condition or combination of conditions [would] reasonably assure the appearance of the person as required and the safety of the community." Section 3142(e). Following an evidentiary detention hearing, the magistrate found that clear and convincing evidence required the detention of Defendants

pending trial because "no condition of release [would] reasonably assure the safety of any other person and the community." The district judge subsequently conducted a separate hearing and made a *de novo* determination that the record supported detention by clear and convincing evidence that "no conditions or combination of conditions would reasonably assure the appearance of the defendants as required and also assure the safety of other persons and the community."[3] Our review of the record persuades us that the district court's finding, by clear and convincing evidence, of insufficient conditions for release was not clearly erroneous.

AFFIRMED.

SPROUSE, Circuit Judge, concurring in part and dissenting in part:

Although I agree with my brethren in the majority that the statutory requirements for detention hearings in the Bail Reform Act, 18 U.S.C.A. § 3142(f) (West 1985 & Supp.1988), are waivable, I do not feel that the magistrate in this case made an adequate determination of whether the defendants in fact waived their rights under the Act. In my view, a defendant can waive the Act's requirements only by his own clear and definitive expressions after direct inquiry from the judicial officer. The judicial officer must also make findings detailing this inquiry and the defendant's expressions. As Judge Phillips points out in Part V of his dissent, the magistrate did not explain the consequences of a waiver to the defendants, and he did not determine if their possible waiver was informed, voluntary, and intelligent. In my view, the magistrate's colloquy with counsel did not satisfy his duty to determine directly the defendants' intentions and states of mind. If the issue were not moot, I would reverse and remand for a rehearing on the question of waiver, directing the district court to

make specific findings on the question of whether the requisite elements of waiver had been satisfied.[*]

I am authorized to say that Chief Judge HARRISON L. WINTER joins this opinion.

PHILLIPS, Circuit Judge, dissenting:

The superseded panel opinion in this case reversed the district court's detention order "as fatally flawed by the failure to hold a timely detention hearing." *United States v. Clark*, No. 88–5079, slip op. at 4 (4th Cir. June 30, 1988) [850 F.2d 690 (table)]. Because I continue to believe that decision was correct, I respectfully dissent.

I

The en banc court holds that the detention hearing and time requirements provided in the Bail Reform Act, 18 U.S.C. § 3142(f), are waivable "rights." The court reasons that if basic constitutional rights can be waived, then statutory rights such as these can also. If what is involved here were nothing more than the exercise of individual rights, I would have to agree. But I do not think that the provisions of § 3142(f) are properly understood as mere conferrals of individual rights. They speak directly to the power of federal courts and should be read as limitations on the power —the "subject matter jurisdiction"—of those courts. As such, these limitations cannot be "waived" by parties.

I realize that subject matter jurisdictional limitations are most directly and firmly expressed in terms of "subject matter" categories, and that one must be cautious in treating more incidental limitations on judicial power as going to jurisdiction itself. Nevertheless, it is clear that limitations of the more incidental variety may have that significance. Ultimately, of course, it is a matter of congressional intent, and certainly Congress has the power to limit jurisdic-

---

**3.** Contrary to Defendants' contention that the district court order did not comply with the specificity requirements of section 3142(i), the district court order, viewed in conjunction with the magistrate's order, sufficiently set forth written findings of fact and reasons for the detention.

* In arriving at this conclusion, I, of course, reject the thesis of Judge Phillips' dissenting opinion that the provisions of the Bail Reform Act are jurisdictional so that an infraction of the time requirement for a detention hearing means that the accused must be released.

tion in any number of ways—wholesale by categories or by less sweeping means.

The controlling principles are clear and fundamental.

Limitations on a court's power to act in particular ways or under any but particular conditions are limitations on the court's subject matter jurisdiction. *Palmore v. United States,* 411 U.S. 389, 401, 93 S.Ct. 1670, 1678, 36 L.Ed.2d 342 (1973). Such limitations "must be neither disregarded nor evaded." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978), and federal courts must " 'scrupulously confine their own jurisdiction to the precise limits which [a federal] statute has defined.' " *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 212, 92 S.Ct. 418, 425, 30 L.Ed.2d 383 (1971) (quoting *Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934)). Statutes limiting judicial power must be construed " 'with precision and with fidelity to the terms by which Congress has expressed its wishes'...." *Palmore,* 411 U.S. at 396, 93 S.Ct. at 1675 (quoting *Cheng Fan Kwok v. INS,* 392 U.S. 206, 212, 88 S.Ct. 1970, 1974, 20 L.Ed.2d 1037 (1968)).

Drawing on these basic principles, I would find in the time limit provisions of the Bail Reform Act an expression of congressional intent to limit the subject matter jurisdiction of federal courts in ordering pretrial detention. Section 3142(f) of the Act requires that a detention hearing

> be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of the person may not exceed five days and a continuance on motion of the attorney for the Government may not exceed three days.

18 U.S.C. § 3142(f). As I construe this language, Congress intended it to have jurisdictional significance. It speaks directly to action by the courts; not to party conduct. In speaking directly to the exercise of judicial power, its language smacks of a power limitation, not a mere precatory

guide. It has been interpreted by other courts to have this character. *See United States v. Hurtado,* 779 F.2d 1467, 1474 (11th Cir.1985) ("The language of subsection (f) is unambiguous and admits of no exception."); *United States v. Al–Azzawy,* 768 F.2d 1141, 1145 (9th Cir.1985) ("the procedures under section 3142 must be strictly followed as a precondition to detention under subsection (e)"); *United States v. O'Shaughnessy,* 764 F.2d 1035, 1038 (5th Cir.1985) (requiring the first appearance language to be applied strictly).

In contrast, the majority here holds that the detention hearing and time requirements may be waived, because § 3142 must be applied with " 'common sense,' " *ante* at 1436 (quoting *United States v. Malekzadeh,* 789 F.2d 850, 852 (11th Cir.1986)), and strict application of these requirements would " 'exalt form over substance,' " *ante* at 1436 (quoting *United States v. Coonan,* 826 F.2d 1180, 1182 (2d Cir.1987)).

But judicial "common sense" has little if anything to do with judicial applications of congressional limitations on judicial power. "Strict construction" is the watchword where questions of the limited judicial power of federal courts are involved. *See, e.g., Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (no jurisdiction under Administrative Procedure Act to review decision of Secretary of Health, Education, and Welfare not to reopen adjudicated claim for social security benefits); *Abercrombie v. Office of Comptroller,* 833 F.2d 672 (7th Cir.1987) (no jurisdiction under 12 U.S.C. § 1818 to enjoin Office of Comptroller from imposing civil money penalties); *Kielwien v. United States,* 540 F.2d 676 (4th Cir.1976) (filing of administrative claim is jurisdictional requirement under Federal Tort Claims Act).

Further, requiring rigorous adherence to the procedure commanded by § 3142(f) by treating it as jurisdictional is not an exaltation of "form" over "substance." Instead, it deals with "substance"—by furthering specific substantive ends of the Bail Reform Act. Indeed it is the only sure way to implement those ends.

As the Supreme Court has recognized, the Act fundamentally altered the long-standing traditional presumption of pretrial release on bail by weakening its historic force through adoption of the "future dangerousness" concept. The resulting constitutional issue was a serious one; a divided Court upheld the Act's constitutionality in part at least because of what it considered sufficiently powerful procedural protections that accompanied the weakening of the "norm" of pretrial release on bail. As the Court put it:

> In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception. We hold that the provisions for pretrial detention in the Bail Reform Act of 1984 fall within that carefully limited exception. The Act authorizes the detention prior to trial of arrestees charged with serious felonies who are found after an adversary hearing to pose a threat to the safety of individuals or to the community which no condition of release can dispel. The numerous procedural safeguards ... [in the Act] must attend this adversary hearing.

*United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 2105, 95 L.Ed.2d 697 (1987).

This concern for stringent procedural safeguards is evident both in the language of § 3142(f) and throughout the legislative history of the Bail Reform Act. The language mandating that the detention hearing "shall be held immediately upon the person's first appearance before the judicial officer ..." replaced the less stringent terms of former § 3146(a), which stated:

> Any person charged with an offense, other than an offense punishable by death, shall, at his appearance before a judicial officer, be ordered released pending trial ... unless the officer determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3146(a) (quoted in H.R.Rep. No. 1121, 98th Cong., 2d Sess. 38–39 (1984)).

*Timeliness* of the detention determination—to avoid prolonged detention even before its justification could be determined—was thus made a critical component of the procedural safeguards that Congress and the Supreme Court obviously considered vital.

As for the legislative history, in its report on the Comprehensive Crime Control Act, of which the Bail Reform Act is a part, the Senate Committee on the Judiciary recognized that

> a pretrial detention statute may ... be constitutionally defective if it fails to provide adequate procedural safeguards or if it does not limit pretrial detention to cases in which it is necessary to serve the societal interests it is designed to protect. The pretrial detention provisions of this section have been carefully drafted with these concerns in mind.

Senate Comm. on the Judiciary, Comprehensive Crime Control Act of 1984, S.Rep. No. 225, 98th Cong., 2d Sess. 8, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3191. "The decision to provide for pretrial detention," the Committee said, "is in no way a derogation of the importance of the defendant's interest in remaining at liberty prior to trial." S.Rep. No. 98–225 at 7, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3189.[1]

---

**1.** During congressional hearings, the Department of Justice issued a similar statement:

> Because of the importance of the defendant's interest which is at stake when pretrial detention is considered, the authority to deny release should be available only in limited types of cases, only after a hearing incorporating significant procedural safeguards, and only when the findings on which the detention order is based are supported by clear and convincing evidence.

Comprehensive Crime Control Act of 1983: Hearings on S. 829 Before the Subcomm. on Criminal Law of the Senate Comm. on the Judiciary, 98th Cong., 1st Sess. 116, 121 (formal statement of the Department of Justice). An official of the Justice Department emphasized that "a detention hearing is an absolute prerequisite for pre-trial confinement." J. Knapp, Deputy Assistant Attorney General, Criminal Division, Department of Justice, The Bail Reform Act of 1984: Our First Year 5 (speech before the National Conference of the National Association of Pretrial Service Agencies, Lexington, Kentucky, Oct. 7, 1985).

See also the statement of Edwin L. Miller, Jr., President–Elect of the National District Attorneys Association: "I find the provisions calling

Congressional intention that the detention hearing and its critical time requirements be rigorously construed and applied is therefore commanded not only by the statute's literal, obligatory language but, as the legislative history reveals, by the substantive ends of the Act. *Accord Hurtado,* 779 F.2d at 1484 (the procedural safeguards of the Act are necessary to guarantee fairness for those faced with the "severe deprivation" of liberty caused by pretrial detention; the language of § 3142(f) "admits of no exception," *id.* at 1474); *Al-Azzawy,* 768 F.2d at 1145 (same); *O'Shaughnessy,* 764 F.2d at 1038 (same). As both a formal and substantive matter, it would be a "contravention of common sense," *Malekzadeh,* 789 F.2d at 852, rather than a failure of common sense to apply the requirements of § 3142(f) in anything less than a strict and rigorous manner—as other than jurisdictional. I am satisfied that if they are not given this effect, they will over time be given little practical effect, as party "waivers" inevitably will be urged and found in a multitude of ambiguous circumstances.

## II

If—as I would hold—the detention hearing and time requirements of § 3142(f) are jurisdictional, they of course cannot be waived. The controlling principle here is, of course, elementary. "[N]o action of the parties can confer subject-matter jurisdiction upon a federal court." *Insurance Corp. v. Compagnie des Bauxites,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed. 2d 492 (1982). Parties cannot consent to non-conferred jurisdiction or waive jurisdictional requirements, because these are limitations imposed on the courts, not on the parties. To permit parties to consent to jurisdiction would "work a wrongful extension of federal jurisdiction and give [federal] courts power the Congress has denied them." *American Fire & Cas. Co. v.*

*Finn,* 341 U.S. 6, 18, 71 S.Ct. 534, 542, 95 L.Ed. 702 (1951). If the parties do not raise the issue of jurisdiction, then the court must on its own motion. *Compagnie des Bauxites,* 456 U.S. at 702, 102 S.Ct. at 2104.

Where, therefore, as here, a timely detention hearing has not been held in accordance with the jurisdictional time limits, the courts thereafter have no power to order pre-trial detention.

## III

The specters raised by the majority do not militate against the conclusion that Congress intended a jurisdictional effect for the requirements of § 3142(f). The majority expresses the fear that strict enforcement of the detention hearing time requirements " 'would convert the time requirements of the act into a potential trap, available to defendants, that would undermine the functioning of the act, and would also require meaningless, ritualistic hearings in situations where no one wants them.' " *Ante* at 1437 (quoting *Coonan,* 826 F.2d at 1184).

Two responses may be made to this. The first is that it is not for the courts to decide whether a hearing required by Congress is meaningless or ritualistic for any particular defendant. The second is that as a practical matter the detention hearing requirements do not create a "potential trap" and that Congress surely knew that they need not, and assumed that they would not. The statutory requirements are plain, explicit, and easy to follow by anyone minded to do so—as surely federal prosecutors and judicial officers must be presumed to be. All that has to be done is to hold a hearing "immediately upon the person's first appearance before the judicial officer unless [either party] seeks a continuance." Aside from the simple day-counting problem that this eminently simple directive

for detention to be well thought out, well drafted and designed to protect the civil liberties of the accused while protecting the safety of the community." Hearings on S. 829 at 296, 305.

Finally, note the prepared statement on behalf of the American Bar Association by William W.

Greenhalgh, Chair of the ABA Criminal Justice Section, stating that when factors are alleged that lead to a pretrial detention hearing, "our standard requires that a formal pretrial detention hearing be convened." *Id.* at 736, 738.

poses, the only possible problem that it could create for prosecutors and judges is whether what might be thought to be a "hearing" is indeed a "hearing," or possibly whether it is the "first" hearing. The simple practical solution in either case is to assume that a hearing is required and to act accordingly.

It is of course obvious that if prosecutors and judges fail to follow the simple detention hearing requirements of § 3142 there could be unfortunate consequences in particular cases (although the release that must then result can yet be subjected to quite stringent conditions).[2] But there appears no reason why these quite clear requirements cannot easily be followed in practice and such consequences avoided. It must certainly be the case that, as Congress undoubtedly intended and expected, prosecutors and judges are daily applying them with no practical problems.

## IV

As an apparent alternative to its basic waiver position, the government suggests that defendants' intimation of a need for "protective custody" here should be construed as a motion for a "good cause" continuance under § 3142(f). This reflects the same failure to distinguish between waivable individual rights and non-waivable limits on judicial power that underlies the government's basic position. The statute's provision for continuances at the behest of either the defendant or the government is properly read as an integral feature of the statutory limitation on judicial power. As such it should be applied with the same stringency appropriate in application of the basic time limitation. Thus, a request for continuance to accommodate a defendant's lawyer's schedule rather than to aid the defendant's preparation may not be considered one for "good cause" warranting postponement of the mandatory hearing.

*See Hurtado*, 779 F.2d at 1475, 1476; *Al-Azzawy*, 768 F.2d at 1146.

Similarly, to construe an intimation of desire for "protective custody" as a request for open-ended postponement of the detention hearing would completely misconstrue the legislative purpose for the detention hearing. The statute requires a timely determination of whether *involuntary preventive* detention is warranted. This can obviously proceed, and should proceed, without regard to whether the defendant may then or later desire or need "protective custody" with its quite different legal incidents for both custodian and inmate. If preventive detention is properly ordered, the matter of "protective custody" as a necessary incident of that detention is resolved. Only if detention for preventive purposes is found unwarranted in a timely detention hearing could there be any need to consider the quite different problem of whether "voluntary" custody should nevertheless be continued for protective purposes. The only proper response by a first-hearing judicial officer to any suggestion of a desire for protective custody is, therefore, that it must await the outcome of the detention hearing. It may not be treated as a "good cause" request for indefinite postponement of that hearing.

## V

Even were I to assume *arguendo* that we are concerned here only with individual rights to a timely detention hearing which, like other such rights, may be waived, I would hold that the conditions for a valid waiver of such a right were not established in the proceedings before the magistrate.

It is important, in assessing the way in which the ultimate right here in issue may —if waivable—be waived, to recognize its nature. At root, it is the constitutional right, protected in the eighth amendment's Excessive Bail Clause, not to be deprived of liberty before trial and conviction, except

---

**2.** The jurisdictional limitation must be interpreted to run only to the power to *detain;* power to impose conditions upon a release compelled by failure to hold a timely detention hearing remains. *See* 18 U.S.C. § 3142; *O'Shaughnessy*, 764 F.2d at 1039 ("The Government may still request imposition of substantial conditions for release under 18 U.S.C. § 3142(c)...."); *Al-Azzawy*, 768 F.2d at 1148 (Farris, J., concurring) ("[T]he district court remains free to impose appropriate substantial conditions for release under 18 U.S.C. § 3142(c)....").

(as now provided by statute) on the basis of a determination of risk of flight and dangerousness timely made. *See Salerno,* 107 S.Ct. at 2105. This is a right comparable, e.g., to the constitutional rights to counsel, *see Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and to trial itself, *see Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), that can only be waived personally by a defendant. In this it is unlike rights which, though also of fundamental importance, have by necessity born of litigation exigencies to be given over—within bounds —to counsel for primary assertion or "waiver," by "procedural default." *See Wainwright v. Sykes,* 433 U.S. 72, 92, 97 S.Ct. 2497, 2509, 53 L.Ed.2d 594 (1977) (Burger, C.J., concurring) (distinguishing *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) and *Sykes* "rights" and "waivers" on this basis).

Waiver of such a right "must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege...." *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981) (waiver of counsel). *See also McFadden v. Garraghty,* 820 F.2d 654, 661 (4th Cir. 1987). To make a binding waiver of this type, a defendant must be shown to have "sufficient awareness of the relevant circumstances" surrounding the waiver and of its "likely consequences." *Brady,* 397 U.S. at 748, 90 S.Ct. at 1468. This means that such a waiver cannot be implied by the courts from a defendant's mere silence or seeming acquiescence, but must be "clearly determined," *Johnson v. Zerbst,* 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), from a record which establishes that the defendant " 'knows what he is doing and his choice is made with his eyes wide open.' " *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942)); *see also Hunt v. Warden, Maryland Penitentiary,* 335 F.2d 936, 944 (4th Cir.1964) (no waiver "when acting under a misapprehension as to what [one's] rights are"). To ensure that such a waiver meets this stringent standard, a court must make direct inquiry of the defendant; it may not rely simply on statements or choices made by counsel. *See* Fed.R.Crim.P. 11(c), (d) (procedure for accepting waiver of trial by guilty plea).

None of these criteria was satisfied in the hearing before the magistrate. The magistrate offered the defendants no explanation of the consequences of a waiver and did not inquire directly of them in any form whether their supposed waiver of the detention hearing requirements and of release was knowing and intelligent. When the subject of waiver was discussed, the magistrate's only conversation was with counsel. *See* Appellee's Memorandum Opposing Pretrial Release, Attachment C at 22–23 (transcript of hearing February 2, 1988).

Even if an attorney could, under the proper circumstances, waive the detention hearing for his or her client, those circumstances would not be satisfied here. At the defendants' appearance before the magistrate, the government attorney acknowledged that because the defendants' attorney was not sufficiently familiar with requisite criminal procedure, he had to outline for this defense attorney "the various hearings and rights his clients would have in connection with the pending charges." *Id.* at Attachment A (Shanahan affidavit). The defense attorney may not have known, therefore, that a detention hearing was required on first appearance of defendants, and he may not have realized the implications of any "waiver" supposedly agreed to during the detention hearing. *See id.* at Attachment C 22–23 (transcript of hearing). Because the defendants' attorney could not have properly informed his clients of the meaning and consequences of a waiver, there could have been no knowing and intelligent waiver.

## VI

Section 3142 of the Bail Reform Act dictates that the detention hearing and time requirements be treated as jurisdictional. These conditions were not satisfied, nor were the conditions for waiver, were waiver possible. Appellants should not have

**1444**

been detained but released on appropriately stringent conditions.

Circuit Judge MURNAGHAN and Circuit Judge ERVIN join in this separate opinion.