**UNITED STATES of America, Plaintiff,**

v.

**Guadalupe
MONTALVO–MURILLO, Defendant.**

**CR No. 89–86 JC.**

United States District Court,
D. New Mexico.

March 1, 1989.

Robert Gorence, Asst. U.S. Atty., Albuquerque, N.M., for plaintiff.

Bernard J. Panetta, El Paso, Tex., Angel Sainz, Las Cruces, N.M., for defendant.

### MEMORANDUM OPINION AND ORDER

PARKER, District Judge.

On February 21, 1989, following a detention hearing held under 18 U.S.C. § 3142(f), the United States Magistrate for the District of New Mexico prepared, but did not enter, an order setting conditions of release of the defendant. Plaintiff took an immediate appeal to the District Court for a *de novo* hearing pursuant to 18 U.S.C. § 3142 which was held on February 23, 1989. Based on the evidence presented during the *de novo* hearing, I find that there is probable cause to believe that the defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act and that the defendant has failed to rebut the resulting statutory presumption that no condition or combination of conditions will reasonably assure defendant's appearance as required and the safety of the community. However, I also determined that there has been a failure to comply with 18 U.S.C. § 3142(f) which precludes further detention of the defendant and mandates the setting of conditions for his release. In addition, I find that the Order Setting Conditions of Release pre-

pared by the United States Magistrate on February 21, 1989 is appropriate with one exception, and that it should be entered as the order of this court after amending paragraph 7(j) to require a bond in the amount of $88,500.00, secured by the execution and delivery of mortgages or other legal instruments covering the unencumbered assets of defendant and his wife, before defendant is released.[1]

*Background.* On February 8, 1989 defendant, a Mexican citizen and legal resident alien of the United States, was arrested by United States Customs agents at a checkpoint in Orogrande, New Mexico in connection with the discovery of a substantial quantity of cocaine in an auxiliary gasoline tank mounted in the rear of defendant's pickup truck. According to the customs agents, defendant advised that his destination was Chicago, Illinois where he intended to make delivery of the cocaine, and at the agents' request defendant agreed to participate in a "controlled delivery" to the anticipated purchasers. The customs agents then met with personnel of the Drug Enforcement Administration who made arrangements for the Chicago venture. Consequently, defendant flew to Chicago, Illinois in the company of a DEA agent and another DEA agent drove defendant's vehicle to Chicago where the controlled delivery was attempted. However, nobody showed up to receive the shipment in Chicago.

On February 10, 1989 a complaint was filed in New Mexico and the United States Magistrate for the District of New Mexico issued a warrant for defendant's arrest; and defendant, who at the time was in Chicago, was taken before a United States Magistrate in Illinois for a hearing in accordance with Rule 40 of the Federal Rules of Criminal Procedure. This was defendant's initial appearance before a judicial officer.

During the February 10 hearing Ms. Garza, the Assistant United States Attorney who was handling the case, advised the Magistrate that the Government "was going to move for detention" but an agreement had been reached with Ms. Green, defendant's court appointed counsel. Ms. Garza represented it had been agreed that defendant would consent to removal of the proceedings to New Mexico, where he was charged, if he would be returned to New Mexico immediately. Ms. Garza stated that they had also agreed that defendant would waive a detention hearing in Illinois, but he would not waive his rights to a preliminary hearing or a detention hearing in New Mexico.

The United States Magistrate in Illinois did not ask defendant any questions to determine his ability to understand his rights and the nature of the proceeding. She asked no questions about his understanding of his rights under 18 U.S.C. § 3142(f). She did not make findings that defendant had knowingly and voluntarily waived his right to an immediate detention hearing or that defendant had consented to a continuance. The Magistrate advised the defendant, through an interpreter, that before being sent back to New Mexico he had the right to a determination that there was probable cause to believe he committed an offense and that he was the person named in the complaint and further advised him that he was entitled to a hearing on detention or bail. The Magistrate then asked "Is that agreeable to you?" Defendant's counsel responded, obliquely, that "we are not waiving the preliminary hearing." The Magistrate then rephrased the question to defendant by asking "Is that acceptable?" Defendant's response, through the interpreter, was "Yes ... if they want me to, I'm with them." Next, the Magistrate asked defendant if he had talked to his counsel, Ms. Green, "about it" and defendant's interpreted reply was "Yes, well she is Ms. Green, right?" The Magistrate said "yes" and "alright, then we will enter an order of removal specifically reserving the issues on detention and probable cause for determination by the District Court in New Mexico ..." Defendant made no state-

---

**1.** Defendant advised Pre–Trial Services that his unencumbered assets included the residence which he valued at $85,000.00 and two vehicles which he valued at $8,500.00. One of the two vehicles was defendant's 1985 Ford pickup, valued at $5,000.00, which the DEA now possesses.

ments during the hearing in Illinois other than the two responses, set forth in full above, and a reply of "yes" to a question about whether he understood he was present for a removal hearing. The United States Magistrate in Illinois ordered that the defendant be returned to New Mexico; he was returned late on the evening of Friday, February 10, 1989 and was jailed in Las Cruces, New Mexico.

On the morning of Monday, February 13, 1989, a representative of the Drug Enforcement Administration conferred with the secretary in the office of the United States Magistrate in Las Cruces, New Mexico about a date and time for a detention hearing and arraignment. The Office of the United States Magistrate for the District of New Mexico scheduled a hearing on Thursday, February 16, 1989. On Wednesday, February 15, 1989 the United States Magistrate appointed counsel to represent the defendant, but retained counsel appeared on defendant's behalf at the hearing the following day, February 16, 1989.

It appears that the Assistant United States Attorney and defendant were prepared to proceed with the detention hearing on February 16, 1989; neither the government nor the defendant moved for a continuance. However, at the beginning of the February 16 hearing the Magistrate stated that "in the interest of justice" the detention hearing should be rescheduled on February 21, 1989, apparently because a Pre-Trial Services Report had not yet been prepared. Again, at the February 16, 1989 hearing, which was defendant's first appearance before a judicial officer in New Mexico, no inquiry was made of defendant's understanding of his right to an immediate detention hearing under 18 U.S.C. § 3142(f) and there was no finding that defendant had knowingly and voluntarily waived his right to an immediate hearing. In fact, the Magistrate did not advise defendant of any rights and asked him no questions. Moreover, the United States Magistrate made no finding, as required by 18 U.S.C. § 3142(f), that there was "good cause" to continue the hearing to February 21, 1989.

In regard to postponing the hearing to February 21, 1989, the Magistrate stated that the hearing would be held that date if the Government moved to detain the defendant and indicated that if it did not, on February 21, 1989 the Magistrate would set conditions of release. The Government filed a Motion for Detention on February 17, 1989. This was the first detention motion that was actually made; the Government had intended to move for detention on February 10, 1989 before the Magistrate in Illinois, but had not done so by reason of the agreement reached with defendant's court appointed counsel in Illinois. Since the Government filed a written motion for detention on February 17, 1989, the United States Magistrate in Las Cruces, New Mexico proceeded with a detention hearing on February 21, 1989 at the conclusion of which the Magistrate said he would set conditions of release but would allow the Government an opportunity to appeal to United States District Court before entry of the order setting conditions of release. The United States Attorney therefore requested an immediate hearing before the District Court and that hearing was held on February 23, 1989.

■ *Flight Risk and Community Danger.* U.S. Customs agents inspected the defendant's 1985 Ford pickup, in which defendant was the only occupant, at approximately 3:30 A.M., February 8, 1989 at a checkpoint near Orogrande, New Mexico and discovered 72 pounds of cocaine, with an estimated street value of almost one million dollars, in an auxiliary fuel tank having no fuel line connections. On February 17, 1989 a Grand Jury indicted defendant for possessing with intent to distribute more than 5 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A), the penalty for which would be a term of imprisonment of not less than 10 years and could be life imprisonment. The indictment was enough to support a finding of probable cause giving rise to the rebuttable statutory presumption under 18 U.S.C. § 3142(e).

In an effort to rebut the statutory presumption raised by 18 U.S.C. § 3142(e), de-

fendant produced evidence which showed that he resided and worked in Chicago, Illinois as a legal resident alien from approximately 1979 to mid–1986 and that in 1980 he married Elisa Madrigal Salgado with whom he had three children, all of whom are United States citizens by reason of their birth in the United States. W–2 forms submitted by defendant reflect that he earned wages from employment in Chicago totalling $22,342.34 in 1985 and $14,086.77 in 1986. Defendant also submitted documents in Spanish which indicate that in August, 1986 he purchased a residence in Ciudad Juarez, Mexico for $40,000.00 which he sold in May, 1988 for $57,000.00 and that he sold a business in Ciudad Juarez, Mexico in May, 1987 for $27,800.00; however, these documents do not state that the transactions were for cash. In addition, defendant provided documents which show that on June 8, 1988 he and his wife purchased a residence in El Paso, Texas in the name of his wife, Elisa Madrigal Salgado, at which gas and electric utilities were registered in the name of the defendant. Defendant and his wife purchased the El Paso residence for approximately $85,000.00 *cash.*

Counsel for the defendant represented that defendant and his family had resided at the residence in El Paso, Texas for five months prior to defendant's arrest in February 1989. From approximately mid–1986 until the fall of 1988, defendant and his family resided in Cuidad Juarez, Mexico, which has a common border on the Rio Grande, with El Paso, Texas. While residing in Cuidad Juarez, defendant operated retail stores. The evidence regarding defendant's activities from which he has earned a livelihood during the last five months while he has been residing in El Paso, Texas is rather vague. During a proffer made by defendant's counsel, there was mention of trading livestock. It is clear, however, that defendant's last employment, documented by W–2 forms or other tax information, was during 1986 in Chicago with American Electric Cordsets. Defendant furnished no documentation of earnings from the retail establishments he claims to have operated in Ciudad Juarez or

from employment or business enterprises during the last five months while residing in El Paso, Texas.

Although he lived and worked in Chicago for approximately seven years, defendant returned with his family to Mexico, the country of his citizenship, where he lived for approximately two years before purchasing a home in El Paso, Texas where he and his family have resided for only the last five months. Defendant has strong ties to Mexico where he was born, lived most of his life, and recently operated business enterprises. Defendant is 31 years of age. He has been an adult ten years. If convicted of the crime charged, he likely will be imprisoned for at least the next ten years of his life, years during which his children will be growing up. The temptation to move back across the Rio Grande will be great. These factors suggest that defendant is a flight risk and that there are no conditions or combinations of conditions which would reasonably assure his appearance in court as required.

In regard to the matter of defendant being a danger to the community, his counsel argued that defendant was merely a "mule" on the lowest rung of the drug trafficking ladder and that the quantity of cocaine found in his possession, although substantial, should not alone support a finding that he is a danger to the community, especially since there is no direct evidence that defendant transported contraband on occasions other than the time he was caught. I believe, however, that there is significant additional evidence from which it could reasonably be inferred that defendant has been much more deeply involved in drug trafficking than a low paid courier intercepted on his first mission. When stopped by U.S. Customs, defendant was the sole occupant of his pickup truck, which he owned, and which had a customized auxiliary fuel tank designed to transport contraband. Moreover, defendant and his wife had purchased a new home in El Paso, Texas in June 1988 for approximately $85,000.00 in cash and subsequently paid for utilities although defendant failed to prove any substantial means of support

after selling his retail businesses in Ciudad Juarez. Although there was mention of cattle trading, defendant produced no evidence indicating that this activity generated any profit. Defendant had $6,500.00 in cash in his possession in addition to the approximately one million dollars worth of cocaine when he was intercepted on February 8, 1989. In the absence of credible evidence of other recent sources of income, the more reasonable inference to be drawn is that defendant had access to substantial sums of cash and possessed a very valuable load of cocaine because he has been engaging in drug trafficking, an enterprise with which he has had more experience than a "mule" on a first time venture. Consequently, I also find that there is no condition or combination of conditions which would reasonably assure the safety of the community if the defendant were to be released.

*Non-compliance with 18 U.S.C. § 3142(f).* The Tenth Circuit has not directly addressed the requirements of 18 U.S.C. § 3142(f).[2] Other circuits that have considered § 3142(f) have unanimously taken the view that § 3142(f) should be read strictly. *E.g., United States v. Hurtado,* 779 F.2d 1467 (11th Cir.1985), *reh'g denied,* 788 F.2d 1570 (11th Cir.1986) (en banc); *United States v. Al–Azzawy,* 768 F.2d 1141 (9th Cir.1985); *United States v. O'Shaughnessy,* 764 F.2d 1035 (5th Cir.) (per curiam), *vacated on reh'g as moot,* 772 F.2d 112 (5th Cir.1985) (per curiam); *United States v. Payden,* 759 F.2d 202 (2d Cir.1985). The history of the Bail Reform Act of 1984 makes evident the reasons for strict construction of the statute. The Bail Reform Act of 1984 substantially revised the Bail Reform Act of 1966 so that in addition to detaining an individual who is a flight risk, the court may now detain a defendant prior to trial if no conditions of release can assure the safety of specific individuals or the community. Sensitive to pretrial deprivation of liberty, yet concerned about crimes committed by defendants on pretrial release, Congress "carefully drafted" pretrial detention procedural requirements in order "to provide adequate procedural safeguards." S.Rep. No. 225, 98th Cong.2d Sess., reprinted in 1984 U.S.Code Cong. & Ad.News 3182, 3191. *See also, United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (Bail Reform Act's extensive procedural requirements safeguard against constitutional violations). Congress believed that these procedural mechanisms rendered pretrial detention constitutional, and on this basis, courts have construed strictly the time limitations of § 3412(f). *See, e.g., United States v. Hurtado,* 779 F.2d 1467, 1474–75 (11th Cir. 1985), *reh'g denied,* 788 F.2d 1570 (11th Cir.1986) (en banc).

Section 3142(f) authorizes a judicial officer to hold a detention hearing:

(1) upon motion of the attorney for the Government ... ... immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of the person may not exceed five days, and a continuance on motion of the attorney for the Government may not exceed three days.

There are two interpretations of the language of § 3142(f). Some courts interpret the time limitations of the statute to mean that the government under no circumstances may obtain a continuance in excess of three days. Under this analysis, a continuance of up to three days may be granted the government; however, any continuance in excess of three days must occur at the

---

**2.** Although the Tenth Circuit has not interpreted the requirements of § 3142, the court has indicated its intention to construe strictly the requirements of § 3142(f). In *United States v. Rivera,* 837 F.2d 906, 925 (10th Cir.1988), the government moved for detention and the defendant requested a continuance in order to prepare. The court granted a five-day continuance subject to defendant's right to request a shorter time. For reasons not set forth in the opinion, a detention hearing was never held. Defendant argued that all charges should be dropped because the failure to conduct a hearing was tantamount to denial of bail without a hearing, in violation of the Eighth Amendment. The court held that failure to conduct a detention hearing "demanded by the statute [was] inexcusable," but was not sufficient reason to dismiss all charges. *Id.*

request of the defendant, and good cause must exist in order to continue a detention hearing beyond the five days permitted the defendant by statute. *See United States v. Melendez–Carrion*, 790 F.2d 984, 992 (2d Cir.1986). Other courts have ruled that upon a showing of good cause, either party may exceed the time limitations set forth in the statute; the government may obtain a continuance in excess of three days, and the defendant may obtain a continuance of more than five days. *United States v. Hurtado*, 779 F.2d 1467, 1474 (11th Cir. 1985), *reh'g denied*, 788 F.2d 1570 (11th Cir.1986) (en banc); *United States v. Al–Azzawy*, 768 F.2d 1141, 1144 (9th Cir.1985) However, under either interpretation of § 3142(f), in the absence of a finding of good cause, the period of a continuance sought by the government and of one sought by the defendant is limited to three and five days, respectively, in light of the fact that the defendant remains detained.

Several courts addressing the issue have found that a defendant can waive the time requirements of § 3142(f). In *United States v. Coonan*, 826 F.2d 1180, 1184 (2d Cir.1987), the court held that where defense counsel stated that "bail was not an issue" since the defendant was being held without bond in state custody on unrelated charges, the defendant implicitly waived his right to a detention hearing within five days. In *United States v. Clark*, 865 F.2d 1433 (4th Cir.1989) (1989 U.S.App. Lexis 100), the court held that the defendants, with assistance of counsel, had explicitly, knowingly and voluntarily waived their rights to a timely hearing because of their desire to remain in protective custody. The Magistrate in that case had determined by direct questioning of the defendants about their rights that they understood the proceedings and the waiver of their rights. *Accord, United States v. King*, 818 F.2d 112, 115, n. 3 (1st Cir.1987). Other courts have stated that a defendant may not waive the time limits of § 3142. *United States v. Hurtado*, 779 F.2d 1467 (11th Cir.1985), *reh'g denied*, 788 F.2d 1570 (11th Cir.1986) (en banc); *United States v. Al–Azzawy*, 768 F.2d 1141, 1145 (9th Cir.1985).

■ After review of authorities, I am persuaded that the time limits imposed by § 3142 are waivable but such waiver must be knowing and voluntary. *See, United States v. Clark*, 865 F.2d 1433 (4th Cir. 1989) (1989 U.S.App. Lexis 100); *United States v. King*, 818 F.2d 112, 115, n. 3 (1st Cir.1987) (defendant should state whether or not he or she objects to a postponement). Cf. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (waiver of right to counsel must be "made with eyes open"); *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970) (waiver of right to trial must be made with "sufficient awareness of the relevant circumstances and likely consequences"). The statute was intended to safeguard constitutional rights and timeliness of the detention determination was made a critical component of the procedural safeguards that Congress and the Supreme Court considered essential. Since waiver of a timely hearing can effectively constitute a waiver of the Eighth Amendment right not to be deprived of liberty prior to conviction without a proper finding of flight risk and community danger, any such waiver must be knowing and voluntary.

■ In this case, however, the defendant did not knowingly and voluntarily waive his right to a detention hearing or waive his rights to the time limits contained in the statute. At the Illinois hearing the defendant merely waived his right to the location of the detention hearing, i.e., to have it conducted in Illinois. Indeed, there was absolutely no discussion of the time limitations of § 3142 during the proceeding before the United States Magistrate in Illinois. As indicated above, the defendant made only three responses to questions during the Illinois hearing, none of which can be understood to constitute a knowing waiver of his right to a timely detention hearing. In addition, his court-appointed counsel made no statements that indicate the defendant's awareness and waiver of his rights. The Illinois Magistrate seemed to be seduced by the notion that promptly returning defendant to New Mexico without first ascertaining whether he could and

did understand his rights would resolve any problem. If the Magistrate had asked questions to determine whether defendant was capable of understanding his rights and the proceeding, had advised the defendant of his rights regarding the deadlines for holding a detention hearing and had inquired whether the defendant knowingly and voluntarily waived the deadlines, the problem that has arisen in this case could have been avoided.

■ Courts have also recognized that by implication a defendant can be deemed to have requested a continuance to a date within the five-day limit of § 3142 applicable to defendants. In *United States v. Malekzadeh*, 789 F.2d 850 (11th Cir.1986), the court held the defendant implicitly requested a continuance for four days when the government requested a three-day continuance and neither the defendant or his retained counsel voiced any objection to holding the hearing on the fourth day in order to avoid a Sunday hearing.[3] Even if it can be implied that at the February 10, 1989 hearing in Illinois the defendant moved for a continuance in this case, the maximum time permitted without a finding of good cause would be five days. Assuming, without deciding, that the time computation should exclude weekend days and holidays,[4] the detention hearing should have been held not later than February 16, 1989. No detention hearing was held on that date even though it appears that the parties were prepared to go forward with the hearing on February 16, 1989.

Courts have held that a judicial officer lacks authority under § 3142(f) to continue the detention hearing on his or her own motion, *United States v. Al–Azzawy*, 768 F.2d 1141, 1144 (9th Cir.1985), or to make a *sua sponte* finding of good cause to extend the time for the hearing beyond the time requested in a motion for continuance. *United States v. Hurtado*, 779 F.2d 1467, 1475–76 (11th Cir.1985), *reh'g denied*, 788 F.2d 1570 (1986) (en banc). On February 16, 1989, the United States Magistrate in New Mexico, without making a finding of good cause and without a request by either party for a continuance, rescheduled the detention hearing for February 21, 1989, "in the interests of justice." The Magistrate's desire to review a Pre-trial Services report prior to holding the detention hearing did not provide authority for the rescheduling absent a finding of good cause and a request for continuance.[5]

■ Congress cautiously placed limitations on a defendant's right to bail when it enacted the Bail Reform Act of 1984. The statute must be read strictly to comply with Congress' intent and the mandates of the Constitution. I find, therefore, that the defendant did not knowingly and voluntarily waive his right to a timely detention hearing, and the detention hearing on February 21, 1989 was held in violation of the time limits imposed under § 3142(f) of the Bail Reform Act of 1984.

■ *Remedy.* Having found that the requirements of § 3142 were not met, I must decide the appropriate remedy. In *United States v. Al–Azzawy*, 768 F.2d 1141, 1145

3. The Eleventh Circuit includes weekend days for purposes of computing the time deadlines under § 3142. See discussion, *infra* note 4.

4. The circuits are split on whether weekend days and holidays should be counted for purposes of computing the time requirements of § 3142(f). *United States v. Hurtado*, 779 F.2d 1467, 1474, n. 8 (11th Cir.1985) (includes weekend days and holidays for purposes of time computation); *United States v. Melendez–Carrion*, 790 F.2d 984, 991 (2d Cir.1986) (time computation should exclude weekends and holidays). In view of the fact that the time requirements would not be met in this case even if weekends and holidays were omitted from the time computation, I need not decide this issue.

5. At the hearing on February 16, 1989, the Magistrate indicated that he would hold the detention hearing on February 21, 1989 if counsel for the government moved for detention. Although I am not deciding here whether the government's mere announced intention to have moved for detention during the Illinois hearing on February 10, 1989 complied with the requirement that the government make a motion immediately upon the person's first appearance, there may have been a failure to comply with § 3142(f) since a Motion for Detention was not actually filed until February 17, 1989.

(9th Cir.1985), the Ninth Circuit held that if time constraints of the Bail Reform Act were violated, the district court should not order unconditional pretrial detention of the person. *See also, id.* at 1146, 1148 (Farris, J., concurring, stating district court remains free to impose appropriate conditions of release under § 3142(f)). *Accord, United States v. O'Shaughnessy,* 764 F.2d 1035, 1038 (per curiam), *vacated on reh'g as moot,* 772 F.2d 112 (5th Cir.1985) (per curiam). However, in *United States v. Hurtado,* 779 F.2d 1467, 1482 (11th Cir. 1985), *reh'g denied,* 788 F.2d 1570 (11th Cir.1986) (en banc), after careful analysis of the strict limitations imposed by § 3142, the court remanded the case for a *de novo* hearing on the issue of the defendant's detention. *Hurtado* thus left open the possibility that a defendant could be detained prior to trial even where there was a failure to comply with the statutory requirements. In *United States v. Clark,* 865 F.2d 1433 (4th Cir.1989) (1989 U.S.App. Lexis 100), the Fourth Circuit, citing the *Hurtado* decision, ruled that even where the requirements of § 3142 are not properly met, automatic release of the defendant is not the appropriate remedy. In *Clark,* however, the failure to comply with the statutory requirements was due to the defendants' expressed desire to be detained for reasons of personal safety. Therefore, *Clark* is clearly distinguishable from this case.

In view of Congress' strongly expressed concern that strict procedural safeguards be implemented to avoid constitutional problems, I believe that pretrial detention is not permissible in a case with a factual situation like that presented here. In 18 U.S.C. § 3142(f) Congress clearly and precisely established very limited time deadlines and a sole means of extending them through a judicial finding of good cause. Nothing in the language of § 3142(f) suggests or implies that Congress intended that these carefully crafted protections could be given up by a defendant without a knowing, voluntary waiver. Although Congress did not explicitly state that a failure to comply with § 3142(f) mandates release on conditions in cases where there is no valid waiver, that, I think, is the import of the § 3142(f) terminology selected by Congress. In a case like this, meaning can be given to § 3142(f) and Congress' intent can be fulfilled only by pretrial release under conditions. I will, therefore, order release pending trial under conditions as set forth in the Magistrate's proposed order, as amended.

IT IS ORDERED that plaintiff's appeal from the Magistrate's oral ruling that he would enter an order setting conditions of release is denied; and

IT IS FURTHER ORDERED that the Magistrate's proposed conditions of release, as amended in accordance with this Memorandum Opinion and Order, will be set forth in a separate order setting conditions of release, which will be entered by this court.